No. 24-3012

---

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

AMERICAN BOARD OF INTERNAL MEDICINE,

*Plaintiff-Appellant,*

v.

JAIME SALAS RUSHFORD, M.D.,

*Defendant-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
Case No. 2:14-cv-06428-KSH-CLW
(The Honorable Katherine S. Hayden)

---

JOINT APPENDIX VOLUME VIII OF VIII
(PAGES JA11595 to JA11745)

---

Hara K. Jacobs
Paul Lantieri III
Elizabeth V. Wingfield
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: 215.885.8500
E-mail: JacobsH@ballardspahr.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

## VOLUME I

Notice of Appeal dated October 24, 2024 ..................................... JA1

Order of the Honorable Katharine S. Hayden dated September 30, 2024    JA4

Sealed Opinion of the Honorable Katharine S. Hayden dated September 30, 2024 ....................................................................................... JA5

## VOLUME II

District Court of New Jersey Civil Case Docket ......................... JA44

Complaint dated October 17, 2014 ............................................... JA77

Answer dated September 22, 2015 ............................................... JA326

## VOLUME III

Third Circuit Court of Appeals [Docket No. 66] Opinion dated December 20, 2020 ...................................................................... JA359

Third Circuit Court of Appeals [Docket No. 67-1] Judgment dated December 20, 2020 ...................................................................... JA366

Third Circuit Court of Appeals [Docket No. 67-2] Notice of Judgment dated December 20, 2020 .............................................................. JA368

Motion to Strike the "Expert Response Report" of Westby G. Fisher dated December 23, 2016 ...................................................................... JA370

TEXT ORDER: The Court hereby terminates the motions to strike (ECF Nos. 134-35, 142) without prejudice as unripe for disposition in light of the pending motions to dismiss and transfer (ECF Nos.    164-65) dated June 29, 2017.    N/A

Motion for Summary Judgment dated February 9, 2024 .............. JA403

Memorandum of Law in Support of Motion for Summary Judgment dated February 9, 2024 ........................................................................ JA405

Statement of Undisputed Facts in Support of Motion for Summary Judgment Order dated February 9, 2024 ................................................................ JA439

Exhibit 1 in Support of Motion for Summary Judgement ............ JA464

Exhibit 2 in Support of Motion for Summary Judgement ............ JA528

Exhibit 3 in Support of Motion for Summary Judgement ............ JA3275

## **VOLUME IV**

Exhibit 4 in Support of Motion for Summary Judgement ............ JA3635

Exhibit 5 in Support of Motion for Summary Judgement ............ JA3995

Exhibit 6 in Support of Motion for Summary Judgement ............ JA4346

## **VOLUME V**

Exhibit 7 in Support of Motion for Summary Judgement ............ JA6299

Exhibit 8 in Support of Motion for Summary Judgement ............ JA10871

Exhibit 9 in Support of Motion for Summary Judgement ............ JA10873

Exhibit 10 in Support of Motion for Summary Judgement .......... JA10881

Exhibit 11 in Support of Motion for Summary Judgement .......... JA10884

Exhibit 12 in Support of Motion for Summary Judgement .......... JA10895

Exhibit 13 in Support of Motion for Summary Judgement .......... JA10919

Exhibit 14 in Support of Motion for Summary Judgement .......... JA10965

Exhibit 15 in Support of Motion for Summary Judgement .......... JA10969

Exhibit 16 in Support of Motion for Summary Judgement .......... JA10983

Exhibit 17 in Support of Motion for Summary Judgement .......... JA11076

Exhibit 18 in Support of Motion for Summary Judgement .......... JA11103

Exhibit 19 in Support of Motion for Summary Judgement .......... JA11132

## **VOLUME VI**

Exhibit 20 in Support of Motion for Summary Judgement .......... JA11134

Exhibit 21 in Support of Motion for Summary Judgement .......... JA11247

Exhibit 22 in Support of Motion for Summary Judgement .......... JA11253

Exhibit 23 in Support of Motion for Summary Judgement .......... JA11296

Exhibit 24 in Support of Motion for Summary Judgement .......... JA11412

Exhibit 25 in Support of Motion for Summary Judgement .......... JA11423

Declaration of Rebecca S. Lipner, Ph.D. in Support of Motion for Summary Judgement dated February 9, 2024 ............................................... JA11427

Letter Motion to Seal Motion for Summary Judgment dated February 16, 2024 ............................................................................................. JA11433

Response to Motion to Seal Motion for Summary Judgement dated February 19, 2024 ........................................................................ JA11435

Cross-Motion for Summary Judgment dated March 1, 2024 ....... JA11437

Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment dated March 1, 2024 ............................................................................. JA11439

Counter-Statement of Material Facts in Response to Plaintiff's Statement of Undisputed Facts in Support of its Motion for Summary Judgement dated March 1, 2024 ............................................................................. JA11475

Defendant's Statement of Material Facts Not in Dispute dated March 1, 2024 ............................................................................................. JA11498

Exhibit 1 in Support of Cross-Motion for Summary Judgment ... JA11506

Exhibit 2 in Support of Cross-Motion for Summary Judgment ... JA11514

## **VOLUME VII**

Exhibit 3 in Support of Cross-Motion for Summary Judgment ... JA11553

iii

Exhibit 4 in Support of Cross-Motion for Summary Judgment ...    JA11577

## **VOLUME VIII**

Exhibit 5 in Support of Cross-Motion for Summary Judgment ...    JA11595

Exhibit 6 in Support of Cross-Motion for Summary Judgment ...    JA11609

Exhibit 7 in Support of Cross-Motion for Summary Judgment ...    JA11633

Exhibit 8 in Support of Cross-Motion for Summary Judgment ...    JA11656

Exhibit 9 in Support of Cross-Motion for Summary Judgment ...    JA11658

Exhibit 10 in Support of Cross-Motion for Summary Judgment .    JA11672

Proposed Order for Cross-Motion for Summary Judgment ........    JA11674

Memorandum in Further Support of Motion for Summary Judgement and in
opposition to Defendant's Cross-Motion for Summary Judgment    JA11675

Counter-Statement of Material Facts in Response to Defendant's Statement of
Material Facts Not in Dispute in Support of Defendant's Cross-Motion for
Summary Judgment......................................................................    JA11713

Exhibit A in Support of Reply Memorandum and Opposition to Defendant's Cross-
Motion ..........................................................................................    JA11726

Exhibit B in Support of Reply Memorandum and Opposition to Defendant's Cross-
Motion ..........................................................................................    JA11729

Reply Memorandum in Support of Cross-Motion for Summary
Judgment ......................................................................................    JA11731

Case 2:14-cv-06428-KSH-CLW    Document 212-8    Filed 03/01/24    Page 1 of 14 PageID: 26829

*American Board of Internal Medicine v. Jaime A. Salas Rushford, M.D.*
No. 14-cv-06428-KSH-CLW

# DEFENDANT

# EXHIBIT 5

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 2:14-CV-06428-KSH-CLW

AMERICAN BOARD OF INTERNAL        :
MEDICINE,                         :
         Plaintiff,               :
                               :
         v.                       :
                               :
JAIME A. "JIMMY" SALAS            :
RUSHFORD, M.D.,                   :
         Defendant.               :

    Transcript of the videotape deposition of

RAJENDER K. ARORA, M.D., called for Oral Examination

in the above-captioned matter, said deposition taken

by and before SILVIA P. WAGE, a Certified Shorthand

Reporter, Certified Realtime Reporter, Registered

Professional Reporter, and Notary Public for the

State of New Jersey, New York, Pennsylvania and

Delaware, at the offices of NICOLL DAVIS & SPINELLA,

LLP, 95 Route 17 South, Suite 316, Paramus, New

Jersey, on January 21, 2016, commencing at 12:27

p.m.

JOB NO. 11635

HUDSON REPORTING & VIDEO                    1-800-310-1769

**New York**          **Hudson Reporting & Video**         **New Jersey**
**Connecticut**       **Nationwide 1-800-310-1769**       **Pennsylvania**
JA11596

2

```
 1    A P P E A R A N C E S :

 2
              BALLARD SPAHR, LLP
 3            BY:  HARA K. JACOBS, ESQ.
              BY:  ROBERTO A. RIVERA-SOTO, ESQ.
 4            1735 Market Street, 51st Floor
              Philadelphia, Pennsylvania  19103-7599
 5            (215) 864-8209
              Jacobsh@ballardspahr.com
 6            Riverasotor@ballardsphar.com
              Counsel for the Plaintiff
 7
              NICOLL DAVIS & SPINELLA, LLP
 8            BY:  MARCO A. GONZALEZ, JR., ESQ.
              95 Route 17 South, Suite 316
 9            Paramus, New Jersey  07652
              (201) 712-1616
10            Mgonzalez@ndslaw.com
              Counsel for the Defendant
11
              GUILLERMO MENA, ESQ.
12            PO Box 11383
              San Juan, Puerto Rico  00922
13            (787) 347-9793
              Guillermo.mena@me.com
14            Pro Hoc Vice Counsel for Defendant

15            COZEN O'CONNOR
              BY:  MELANIE A. MILLER, ESQ.
16            One Liberty Place
              Philadelphia, Pennsylvania  19103
17            (215) 665-2714
              Mmiller@cozen.com
18            Counsel for Rajender K. Arora, M.D.

19    A L S O   P R E S E N T :

20            ANTONIO VALIENTE
              PENDING PHV COUNSEL FOR DR. SALAS
21
              JAIME A. SALAS
22            PENDING PHV COUNSEL FOR DR. SALAS

23            JOHN E. SZPARA
              VIDEOGRAPHER
24

25
```

3

```
 1                         I N D E X

 2    WITNESS:  RAJENDER K. ARORA, M.D.              PAGE

 3    EXAMINATION BY MR. GONZALEZ                    7

 4

 5                       E X H I B I T S

 6    EXHIBIT NO.             DESCRIPTION            PAGE

 7    Arora 1       12-page Arora Board Review        30
                    marketing materials
 8    Arora 2       one-page Continuing Medical       52
                    Education Certificate from
 9                  Arora Board Review for Jaime
                    Salas-Rushford, MD
10    Arora 3       16-page Process Receipt and       66
                    Return filed in the Eastern
11                  District of Pennsylvania
                    against Dr. Arora
12    Arora 4       five-page Civil Docket for        74
                    Case No. 2:09-cv-05707-JCJ
13    Arora 5       22-page Complaint in the          74
                    Eastern District of
14                  Pennsylvania, ABIM v. Dr.
                    Arora and Anise Kachadourian
15    Arora 6       one-page color printout of A.     82
                    Benjamin (Ben) Mannes from
16                  Philadelphia InfraGard
      Arora 7       two-page e-mail string            83
17    Arora 8       two-page e-mail string            87
      Arora 9       copy of color photograph          93
18    Arora 10      Notice of Subpoena Duces Tecum   104
                    to Rajender K. Arora, M.D.
19

20

21

22

23

24

25
```

**New York**
**Connecticut**

**Hudson Reporting & Video**
**Nationwide 1-800-310-1769**

**New Jersey**
**Pennsylvania**

JA11598

5

```
 1                    THE VIDEOGRAPHER:  We are now going

 2    on the video record of Media Unit No. 1.

 3            The time is now 12:27 p.m.  Today is

 4    Thursday, January 21st, 2016.  This is the video

 5    deposition of Dr. Rajender K. Arora in the case of

 6    American Board of Internal Medicine verse Jaime A.

 7    Salas Rushford, M.D., filed in the United States

 8    District Court for the District of New Jersey, Civil

 9    Action No. 2:14-CV-06428-KSH-CLW.

10            This deposition is being held at Nicoll

11    Davis & Spinella LLP, Route 17, Suite 316, Paramus,

12    New Jersey.

13            My name is John E. Szpara.  I'm your

14    certified legal video specialist, the court reporter

15    Silvia Wage.  We are both here present representing

16    Hudson Court Reporting located in New Jersey and New

17    York.

18            Please note that audio and video recording

19    will continue unless all parties agree to go off the

20    record.  The microphones are sensitive and can pick

21    up whispers and private conversations along with

22    cell phones.

23            Counsel will now state their appearance and

24    firms for the record starting with the Plaintiff.

25                    MS. JACOBS:  Hi.  Hara Jacobs from
```

15

1    certifications?

2         A.    I -- after that, after I took

3    internal medicine, I went for -- I did

4    gastroenterology and geriatrics.

5         Q.    Do you recall the time period when

6    you took those exams?

7         A.    Those two have to be after -- by

8    their rules, you have to take after Board of

9    Internal Medicine, which has to be after 1986.

10        Q.    Did you pass those exams as well?

11        A.    No, I kept failing.  I think I failed

12   three times in each one of those or something like

13   that.  I don't recall exactly how many times.

14        Q.    Did you eventually pass them?

15        A.    Eventually, I passed both, yeah.

16        Q.    Do you remember what time period that

17   was?

18        A.    No, I don't.

19        Q.    Prior to December 2009, were you

20   still Board certified in internal medicine,

21   gastroenterology and --

22        A.    Yes.

23        Q.    And there was a third one, which was

24   that?

25        A.    Geriatrics.

New York
Connecticut

Hudson Reporting & Video
Nationwide 1-800-310-1769

New Jersey
Pennsylvania

JA11600

16

```
 1          Q.      Geriatrics.
 2          So prior to -- just so I'm clear, prior to
 3    December 2009, you were still certified in those
 4    three areas?
 5          A.      Yes, I was.
 6          Q.      Are you still certified in those
 7    three areas?
 8          A.      No.
 9          Q.      When did you -- when did that change?
10          A.      After ABIM sued me and there is a
11    settlement.
12          Q.      Do you recall when your
13    certifications were revoked, if that's the
14    appropriate word?
15          A.      Somewhere at the time of settlement.
16          Q.      Okay.  What was the action that took
17    place so that you were not -- no longer Board
18    certified in those three areas?
19          A.      They were the terms of the
20    settlement.
21          Q.      I understand.  But I used the word
22    "revoke."  Is there a more appropriate word?
23                  MS. MILLER:  Objection.
24          Q.      What action did they take concerning
25    your certifications?
```

22

1    of revenue prior to December 2009, other than your

2    medical practice?

3           A.      No.  But I did -- I ran Arora Board

4    Review.

5           Q.      Okay.  What's the Arora Board Review?

6           A.      Teaching medicine to the people who

7    are going for the Board exam.

8           Q.      Which Board exam was that?

9           A.      American Board of Internal Medicine.

10          Q.      Okay.  So, prior to December 2009, in

11   addition to your medical practice, you also had

12   another business that taught individuals to study

13   for the Internal Board examination?

14                  MS. MILLER:  Objection.

15          A.      Yes.

16          Q.      Okay.  When did that -- when did you

17   start that business?

18          A.      Somewhere in the mid '90s and '94

19   sometime, 1994, something around that.

20          Q.      And I think you said the name was

21   Arora Board Review --

22          A.      Board Review.

23          Q.      -- is that correct?

24          A.      Uh-huh, uh-huh.

25          Q.      Did that business have any other

23

1    names?

2        A.      No.

3        Q.      Who were the owners of that business?

4        A.      Myself.

5        Q.      Was it incorporated?

6        A.      No.  It was a part of my practice.

7    It was incorporated in the practice.

8        Q.      Okay.  Was your practice

9    incorporated?

10       A.      I do not -- I think so, but I am not

11   sure because initially my practice was incorporated,

12   then I had taken off and then I put it in.  So I

13   don't remember the dates.

14       Q.      Is the Arora Board Review still an

15   entity that's part of your practice?

16               MS. MILLER:  Objection.

17       A.      No.

18       Q.      Okay.  So it no longer functions; is

19   that...

20       A.      No.

21       Q.      It's no longer an operating business?

22       A.      No.

23       Q.      When did it cease to become an

24   operating business?

25       A.      When -- right after the day she --

39

1    and June 2008?

2            A.      Yeah, that's obvious.

3            Q.      Okay.  Were those always the

4    objectives for all of your courses?

5            A.      I don't know.

6            Q.      Where it says, "No. 1, concise

7    review" and then "unusual format" and the words

8    "unusual format" are underlined, can you explain

9    what you mean by that?

10           A.      The "usual format" of lectures is the

11   speaker comes and starts talking, everybody listens.

12   My style was giving the questions and then answering

13   the question.

14           Q.      When did you begin that type of

15   format?

16           A.      From the beginning.

17           Q.      Who were your competitors in

18   providing lectures to prepare for the Board Review

19   class exam starting in the mid '90s?

20           A.      I don't recall who anybody was.

21           Q.      How about just before December 2009,

22   do you recall who were your competitors?

23           A.      Somebody in New York and somebody in

24   New Jersey, but I don't remember their names.

25           Q.      You testified that your "unusual

62

1    in existence and let him put it into his own words.

2                    MR. GONZALEZ:  Okay.

3                    MS. MILLER:  Because it's taking much

4    too long.

5                    MR. GONZALEZ:  Thank you.  It's my

6    examination.  I'll continue --

7                    MS. MILLER:  Well, you will not

8    continue, sir, because if it keeps up, I will cut it

9    off -- (gesture) just like that.  Okay, so you will

10   not continue.

11                   MR. GONZALEZ:  Your objection is on

12   the record.  I'll rephrase my question.

13        Q.      Doctor, what happened the morning

14   when you were awoken up in December of '09, tell me

15   what you recall.

16        A.      The lawyer and few other people from

17   ABIM, they came on my door and showed me some papers

18   from -- signed by a judge that they had the right to

19   come in and check the premises.

20        Q.      What "premises" are you talking

21   about?

22        A.      My home.

23        Q.      Okay.  And what time was this?  You

24   said you were awoken.

25        A.      I don't remember.

63

```
 1          Q.      Okay.  Do you know who was present
 2     there?
 3          A.      Me and my wife.
 4          Q.      Okay.  And is there anybody in this
 5     room right now who was present that day?
 6          A.      Yes, the lawyer from ABIM.
 7          Q.      Okay.  Ms. Hara Jacobs?
 8          A.      Yes, sir.
 9          Q.      Okay.  Were there any other
10     individuals?  You mentioned other individuals.  Were
11     there any officers or -- present?
12          A.      Yes, there were but -- yes, there
13     were, but I don't know how many.
14          Q.      Okay.  Who communicated with you
15     during that process?
16          A.      The lawyer.
17          Q.      Ms. Jacobs?  You're pointing to Ms.
18     Jacobs?
19          A.      Uh-huh.
20          Q.      Is that correct?
21          A.      Yes.
22          Q.      And what did she tell you?
23          A.      I don't remember.
24          Q.      Okay.  You said she gave you some
25     documents?
```

                                                                    64

    1        A.      Yeah.

    2        Q.      Do you have copies of what she gave

    3   you?

    4        A.      Not at this -- I may have at home,

    5   but I don't remember.

    6        Q.      Okay.  And so what happened after she

    7   gave you the documents?  Describe to me what

    8   occurred, what occurred next.

    9        A.      I -- specifically, I don't remember.

   10   All I know is that they wanted to look at the

   11   records related to my lectures and students and they

   12   went over the computer and they actually opened up

   13   one of the computers and took some stuff out of it.

   14   I have no knowledge of what.  And they looked at

   15   certain areas of my house, in my office, wherever

   16   the business was being held.  And the thing which I

   17   recall the most, they even looked at jewelry box of

   18   my wife.

   19        Q.      Okay.  Did they -- did you have any

   20   conversations during the time that they were looking

   21   through your material?

   22        A.      I'm sure there was some conversation.

   23   But I don't recall any specific conversation.

   24        Q.      Do you know the makeup of the people

   25   that were there other than Ms. Jacobs?  What I mean

93

```
 1    the name wrong.

 2                    MR. RIVERA-SOTO:  I'm sorry.

 3                    MS. MILLER:  It's Melanie.

 4                    MR. RIVERA-SOTO:  Melanie, okay.

 5         A.      In her case, I remember they wanted

 6    to see jewelry box of my wife.  That really bothers

 7    me.

 8         Q.      I understand, Doctor.  It was

 9    probably a dramatic moment.

10                    MR. GONZALEZ:  I'm going to -- I

11    apologize.  I only have two copies, but I'll make

12    more for you.

13         I'm going to identify as 9, A9, a photograph

14    of Dr. Salas.  He is the individual to the right,

15    not the items to the left.

16         (Deposition Exhibit Arora 9, copy of color

17    photograph, was marked for identification.)

18         (There is a discussion off the record.)

19         A.      The one on the right here?

20         Q.      Yes.

21         A.      The one without that...

22         Q.      Yes.

23         A.      I don't, I'm sorry.  I wish.  I don't

24    know.  I don't remember.

25         Q.      No, I understand.
```

*American Board of Internal Medicine v. Jaime A. Salas Rushford, M.D.*
No. 14-cv-06428-KSH-CLW

# DEFENDANT

# EXHIBIT

Case 2:14-cv-06428-KSH-CLW   Document 212-9   Filed 03/01/24   Page 2 of 24 PageID: 26844

```
                                                        Page 1
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF NEW JERSEY
 3
 4    AMERICAN BOARD OF INTERNAL   )
 5    MEDICINE,                    )
 6                   Plaintiff,    )
 7            vs.                  )  No. 2:14-cv-06428
 8    JAMIE SALAS RUSHFORD, M.D., )
 9                   Defendant.    )
10
11
12
13            **** C O N F I D E N T I A L ****
14
15
16            The deposition of GERALDINE LUNA, M.D.,
17    called for examination, taken before TRUDY G. GORDON,
18    a Certified Shorthand Reporter of the State of
19    Illinois, County of Cook, taken at 233 South Wacker
20    Drive, Suite 6600, Chicago, Illinois, on the 14th day
21    of September A.D. 2016, at 8:00 a.m.
22                  VERITEXT LEGAL SOLUTIONS
                      MID-ATLANTIC REGION
23             1801 Market Street - Suite 1800
                    Philadelphia, PA  19103
24
```

C O N F I D E N T I A L

```
                                              Page 2
 1      PRESENT:
 2           BALLARD SPAHR, LLP
             1735 Market Street
 3           51st Floor
             Philadelphia, PA  19103-7599
 4           215-665-8500
             BY:  MS. HARA K. JACOBS
 5                jacobsh@ballardspahr.com
                       -and-
 6                MR. TYLER R. MARANDOLA
                  marandolat@ballardspahr.com
 7
                  appeared on behalf of the Plaintiff;
 8
 9
10           LAW OFFICES OF ANDREW L. SCHLAFLY
             521 Fifth Avenue
11           17th Floor
             New York, New York  10175
12           908-719-8608
             BY:  MR. ANDREW L. SCHLAFLY
13                aschlafly@aol.com
14                appeared on behalf of the Defendant.
15
16
     Attorney Telephonically for Defendant:
17
     MR. GUILLERMO MENA
18
     Attorney Telephonically for Deponent:
19
     MR. ANDREW WACHLER
20
21
22
23   REPORTED BY:  TRUDY G. GORDON, C.S.R.
24                 CERTIFICATE NO. 084-004077
```

C O N F I D E N T I A L

Page 3

```
 1                    I N D E X

 2   WITNESS                                    PAGE

 3   GERALDINE LUNA, M.D.

 4   EXAMINATION BY MS. JACOBS...................    4

 5   EXAMINATION BY MR. SCHLAFLY.................   64

 6   FURTHER EXAMINATION BY MS. JACOBS...........  139

 7   FURTHER EXAMINATION BY MR. SCHLAFLY.........  140

 8

                      E X H I B I T S

 9

10   DEPOSITION EXHIBITS        DESCRIPTION       PAGE

11   EXHIBIT NO. 1             SUBPOENA             6

12   EXHIBIT NO. 2             COMPLAINT           10

13   EXHIBIT NO. 3           PHOTOGRAPH OF         93

                            BENJAMIN MANNES

14

     EXHIBIT NO. 4       E-MAIL WITH ATTACHMENTS  132

15

     EXHIBIT NO. 5       10-26-2015 LETTER TO     134

16                          FIDEL CASTILLO

17

18

19

20

21

22

23

24
```

CONFIDENTIAL

Page 4

1                    (WHEREUPON, THE WITNESS WAS DULY

2                    SWORN.)

3        MR. SCHLAFLY:  Could we agree to the usual

4    stipulations, specifically that all objections except

5    for the form of the question are reserved for trial.

6        MS. JACOBS:  Yes, we are agreed.

7                    GERALDINE LUNA, M.D.,

8    called as a witness herein, having been first duly

9    sworn, was examined and testified as follows:

10                   EXAMINATION

11   BY MS. JACOBS:

12       Q.    Good morning, Dr. Luna.

13       A.    Good morning.

14       Q.    My name is Hara Jacobs, and I represent

15   the American Board of Internal Medicine in this

16   action against Dr. Jaime Salas Rushford.  I'll be

17   referring to the American Board of Internal Medicine

18   as ABIM.

19            Is that okay?

20       A.    Okay.

21       Q.    Can you please give me your home and

22   business address?

23       A.    My home address is 4139 North Albany

24   Avenue, Chicago, Illinois 60601 -- 08.  I'm sorry.

CONFIDENTIAL

Page 8

1   sign up to take ABIM certifying examination in
2   internal medicine?
3       A.   Yes, I did.
4       Q.   Did you actually take that examination?
5       A.   Yes, I did.
6       Q.   Do you recall the date when you took it?
7       A.   It was August the 12th.  It was in 2009.
8       Q.   Can you briefly describe for me how you
9   prepared to take the ABIM examination?
10      A.   We went to the Arora course, a board
11  course that was in New Jersey at the time.  It was
12  for a week, an intensive course, and I also used the
13  material for -- from the ACP, the questions.
14      Q.   And so in addition to taking the Arora
15  Board Review Course, did you study on your own for a
16  period of time?
17      A.   We took a month before.  Like after
18  finishing Arora, during July I studied on my own,
19  like re-using that material.
20      Q.   After you took your ABIM exam on
21  August 12, 2009, did you communicate with any of your
22  residency colleagues about your ABIM exam?
23      A.   After taking the exam, I did.
24      Q.   Which colleagues?

CONFIDENTIAL

Page 34

1    and targeted answer.  So just by going down and

2    reading the answers and skimming through the

3    paragraph of the question, you could have like done

4    it like in five minutes or so.  So that was like half

5    a page to give me a little answer, so that's why I

6    remember.

7         Q.    Going down to the entry that says AI, what

8    does that refer to?

9         A.    Aortic insufficiency.

10        Q.    And what is that question?

11        A.    With a gradient, and it says more than 60

12   ejection fraction -- This is the ejection fraction

13   here on the corner, like 35 percent.  Then it goes

14   like what do we do?  In that particular -- This

15   particular question was discussed by Arora.  So this

16   is one of the few questions that he discussed in his

17   material that it was exactly the same in the exam.

18   So I would say like 20 percent was material like

19   exactly the same questions like he discussed.  So

20   this is one of them.

21        Q.    So this specific question here, the AI,

22   was discussed in Dr. Arora's course?

23        A.    Yeah.  He gave like a couple of examples

24   like -- and then that one in particular came in our

CONFIDENTIAL

Page 35

1   exam.

2         Q.    And that question was also on your exam?

3         A.    Um-hum.

4         Q.    Other than this question which you just

5   pointed out, the other questions that we've gone over

6   so far this morning, did you recognize any of the

7   other ones --

8         A.    No.

9         Q.    -- from Dr. Arora's course?

10        A.    No.  Like hardly.  I would say like 15

11  percent was repeated like exactly the same way that

12  he had it in his material.  But the rest of his exam

13  was like -- to me they were new questions.  I've

14  never seen them before.

15        Q.    How about the next entry that talks about

16  pictures of a lesion, can you describe that question?

17        A.    The molusco again?  This one?

18        Q.    No.  Below the -- It says, p-i -- I think

19  it says, p-i-c-s.  It's under AI.

20        A.    Picture of a lesion.  Patient states has

21  grown in the past year.  Itches when scratches.

22  Parts peels off.  Lentigo maligna and compound.  That

23  one in particular -- Melanoma versus -- What was it?

24  Yeah, I remember this question also.  These were the

CONFIDENTIAL

Page 42

1    the patient with bronchitis, can you explain that

2    scenario?

3         A.    Okay.  Patient with bronchitis.  No

4    background info.  Patient with occasional cough.

5    Then it was a PPD of 15.  So that was the part that

6    we know that something was wrong with this patient

7    aside from the cough, obviously.  So we were

8    discussing a -- He had pleural effusion, chest

9    X-rayed, biopsy is pending.  So in that particular

10   case we thought we were talking about like TB,

11   tuberculoma.  So those are like what to do.  Start

12   antibiotic.  Consult for chest tube.  Start for the

13   drugs of an anti -- Start treating directly.  So we

14   wanted to do like a consult to -- for bronchoscopy

15   just to isolate the microorganism and get

16   sensitivities.  So that was -- Yeah, that was the one

17   that I chose in the exam, the answer.

18        Q.    I want to direct your attention, and I

19   may -- I'm going point on your paper because there's

20   a word here I definitely don't recognize.

21        A.    Oh, pleocytosis.

22        Q.    Right.  And then it says do not remember.

23        A.    Oh, it's I don't remember what comes

24   afterwards.  Not that the patient doesn't remember.

CONFIDENTIAL

Page 43

1    I know pleocytosis, but I can't give anything
2    further.  So I know that pleocytosis.  I do not
3    remember the rest.  Not that the patient is suffering
4    from some sort of dementia or delirium or anything
5    like that.
6         Q.    So then the statement --
7         A.    What to do with this patient.
8         Q.    So --
9         A.    I'm sorry.
10        Q.    Wait till I ask my question.
11              So the statement here about do not
12   remember refers to the fact that you did not remember
13   the rest of the facts in the question; is that right?
14        A.    Yeah, the rest of the question I didn't
15   know.  I just knew like the relevant information.
16   Like this was fragments of questions.  I didn't know
17   all of them.
18        Q.    How about the next entry which I can't
19   read that word, something --
20        A.    Strongyloides?
21        Q.    Yes.
22        A.    Strongyloides question.  If the patient is
23   suffering from asthma and they have him on steroids
24   and it does not get better.  So this particular

C O N F I D E N T I A L

Page 107

1      A.    That word.  Treatment with nitrate was in

2   the question.

3      Q.    You're saying that arrow was in the

4   question?

5      A.    Not the arrow.

6      Q.    Not the arrow.

7      A.    Nitrate was in the question.  Treatment

8   and corkscrew was in the question.

9      Q.    So you're saying three words here?

10      A.    Three words were identically taken from a

11   question.

12      Q.    Okay.  And how many more words were in

13   that question that were not here?

14      A.    A lot of words.

15      Q.    Okay.  So 3 out of maybe 30 words in the

16   question?

17      A.    Yes, 3 out of 30.

18      Q.    Three out of 30?

19      A.    Probably, yeah.

20      Q.    Okay.  All right.

21            So your testimony is that for that

22   question what you see here is a copy of only 3 out of

23   30 words in that question?

24      A.    That was what I fed him -- This was the

C O N F I D E N T I A L

Page 108

1    questions that -- These are the words that I took

2    exactly from the board exam and I discussed it

3    directly to him, and he wrote it exactly the way that

4    I told him.

5         Q.    But there were only 3 of about 30 words?

6         A.    In that particular space three was what I

7    gave him.

8         Q.    Out of about 30 words or even more?

9         MS. JACOBS:  Objection to form.

10   BY THE WITNESS:

11        A.    Or even more.

12   BY MR. SCHLAFLY:

13        Q.    Is there any -- Any other things that you

14   went through this morning?

15        A.    Everything.

16        Q.    Okay.  Can you point to anything else here

17   where you see a complete question with identical

18   wording to what was on the exam?

19        A.    Like the whole 50 questions -- the whole

20   50 words of the question?  There's no such thing.

21   These are fragments of the questions I took in the

22   exam and I discussed with him.

23        Q.    But there's no complete copy of a question

24   anywhere here?

C O N F I D E N T I A L

Page 109

1          MS. JACOBS:   Objection, form.

2     BY THE WITNESS:

3          A.    Not completely.  Not all the words of the

4     questions are in any particular of these questions.

5     Those are fragments of every question that I took in

6     the exam that I remember.

7     BY MR. SCHLAFLY:

8          Q.    Every question?

9          A.    Not every question.  Not the 250

10    questions.  But the ones that I remembered.

11         Q.    In the alleged conversations you had with

12    Dr. Salas Rushford, do you recall what time of day

13    they were?

14         A.    There were different times of the day.  I

15    recall that when I came from the exam, I ended up in

16    conversation with another person that I had on the

17    phone.  I remember that later on at nighttime at some

18    point in my room, I remember having conversations

19    with him.  I remember coming to Chicago and certain

20    that like noon-ish I would have a conversation with

21    him, another of the other physicians I just

22    mentioned, couple of times a day.  They might pass a

23    day and then I had another conversation.  So I do

24    remember the time frame, and I remember -- I even

CONFIDENTIAL

Page 111

1    be taking classes together -- not classes -- but

2    rotations together.  So we -- I believe I had a

3    candid relationship with him.

4         Q.    Do you know what the name of his brother

5    is?

6         A.    No.  I know his mother was a lawyer.  I

7    didn't know his father was.  But I remember he had a

8    sister.  I didn't remember he had a brother.  I don't

9    know.  I kind of knew little things.  We were not

10   best friends, if that's what you're inferring or we

11   were hanging out in the same circles.  He was another

12   peer which I happened to like as a person.

13        Q.    Do you know an individual named Ms. Lynn

14   Langdon, L-A-N-G-D-O-N?

15        A.    If I recognize that name?

16        Q.    Yeah, do you recognize that name?

17        A.    Lynn Langdon?

18        Q.    Lynn Langdon, L-A-N-G-D-O-N.

19        A.    Not just off the top of my head.  I don't

20   remember that.

21        Q.    How about an individual named Mark Jacob

22   Weinstein?

23        A.    No.

24        Q.    Did you ever communicate with Mr. Hara

CONFIDENTIAL

Page 116

```
 1        A.    Yeah.  Like do you -- And I remember those
 2   because those were exactly the ones that I pointed
 3   out and I had given my written testimony back then.
 4        Q.    And did you communicate back to Hara?
 5        A.    I told her I do recognize all those
 6   writings as exactly I did back then.
 7        Q.    And was that by e-mail?
 8        A.    No, it was in person.
 9        Q.    You met Hara in person last week?
10        A.    These papers were given to me last week in
11   person.
12        Q.    So Hara visited you last week?
13        A.    Yes.
14        Q.    Here in Chicago?
15        A.    Yes.
16        Q.    She met with you?
17        A.    Yes.
18        Q.    About how long was the meeting?
19        THE WITNESS:  Drew, do I have to answer that?
20        MR. WACHLER:  Yes, you can answer it.
21   BY THE WITNESS:
22        A.    It was like three hours.
23   BY MR. SCHLAFLY:
24        Q.    And did Ms. Jacobs go through the
```

CONFIDENTIAL

Page 117

1    documents with you at that time?

2          THE WITNESS:  Drew, is it okay?

3          MR. WACHLER:  Yes, you can answer it.

4    BY THE WITNESS:

5          A.    Yes, we -- We went over these documents.

6    BY MR. SCHLAFLY:

7          Q.    And was it very similar to the questions

8    she asked you this morning?

9          THE WITNESS:  Is it okay that I answer?

10         MR. WACHLER:  Yes, you can answer.

11   BY THE WITNESS:

12         A.    Yeah.  Basically.

13   BY MR. SCHLAFLY:

14         Q.    And so she told you what she'd be asking

15   you this morning; is that right?

16         MS. JACOBS:  Objection to form.

17   BY THE WITNESS:

18         A.    She didn't tell me exactly what she would

19   be asking, but I -- She's repeating all these

20   questions.

21   BY MR. SCHLAFLY:

22         Q.    And she had you go through each of these

23   handwritten notes last week in person?

24         A.    We -- Yes, we checked all these notes,

CONFIDENTIAL

Page 118

1   yeah.

2        MR. SCHLAFLY:  So we need to take a break and

3   call the Court at this time.

4                          (WHEREUPON, WE WERE OFF THE

5                          RECORD AT 10:44 A.M. TO 10:48

6                          A.M.)

7        JUDGE WALDOR:  On the record.  I think I have

8   enough background.

9        MR. SCHLAFLY:  Okay.  So it's a third party

10  we're deposing here, and she was another doctor

11  investigated by ABIM, and she entered into a

12  settlement agreement with the ABIM that enabled her

13  to get her board certification restored.  And I

14  assume -- And she's confirmed the existence of that

15  settlement agreement with the ABIM.  That's all she

16  would answer about it.  And she's here giving

17  testimony.  ABIM met with her last week.  That's been

18  confirmed.  They went through the testimony she was

19  going to give today.  They went through that last

20  week with ABIM's attorney.  And I'm assuming that she

21  has to do this pursuant to the agreement with the

22  ABIM.  So I'm trying to probe that because it goes to

23  her credibility, and her attorney has objected to

24  that because he says it's a confidential agreement.

CONFIDENTIAL

Page 122

1    that and the agreement is not producing any

2    documentation, it's not such thing there.

3         Q.    So your testimony is that the agreement

4    does not require you to produce documents to ABIM?

5         A.    No, just to -- if need -- for the purpose

6    being like everything was checked and the only thing

7    was --

8              Can I go into details?

9         MR. SCHLAFLY:  You have to go into details.

10   BY THE WITNESS:

11        A.    So it was like restitution of time in the

12   community, you know, like some way of restitution for

13   wrongdoing, everything was submitted, like what I had

14   written in testimony was submitted before even coming

15   to a settlement, and part of the settlement was, if

16   needed, would I be willing to stand on what I already

17   said, and I said yes.  So -- And if needed in a

18   deposition, I would cooperate or in further

19   investigations regarding what I already submitted.

20   So I said yes.

21   BY MR. SCHLAFLY:

22        Q.    And what's the penalty in the agreement if

23   you did not comply with it?

24        A.    If I violated any of the clauses, then we

CONFIDENTIAL

Page 123

1    will go back to square one, to zero.

2         Q.    Which is revocation of your certification,

3    isn't it?

4         A.    Yeah -- I assume so.

5         MS. JACOBS:  Objection to form.

6    BY MR. SCHLAFLY:

7         Q.    Does that frighten you, the possibility of

8    having your certification revoked?

9         A.    Well, I value my certification.  I work

10   very hard for it.  But at the same time I don't see

11   why it would happen because this is the truth, so I'm

12   not in violation of anything.

13        Q.    I'm asking you if it frightens you, the

14   possibility of your board certification being

15   revoked?

16        A.    Well, yeah, it's scary that anything that

17   I work for hard was taken from me.  Yeah, it would be

18   scary.

19        Q.    And would that have consequences with your

20   employment?

21        A.    I'm not obligated to be board certified,

22   but I assume there would be consequences if I have to

23   display that I have any disciplinary actions in any

24   of my board certifications or any other agencies.  So

C O N F I D E N T I A L

Page 129

1   circulation, no.  He wasn't there.

2        Q.    So Arora Board Review is no longer in

3   business?

4        A.    I understand, no.

5        Q.    Did you have any communications with Arora

6   Board Review after you took the boards?

7        A.    Not after that incident, I didn't.

8        Q.    When was your last communication with

9   Dr. Arora and the Arora Board Review?

10        A.    It could have been during that weekend, I

11   suppose.

12        Q.    What weekend?

13        A.    After the 12th when I took my exams.  So

14   my communications were limited to that particular

15   week.

16        Q.    In 2009?

17        A.    2009.

18        Q.    Why did you communicate test questions to

19   Dr. Arora?

20        A.    Because I really wanted to know those

21   answers.

22        Q.    So you were communicating to him to --

23        A.    Directly.

24        Q.    To see if you had answered the questions

CONFIDENTIAL

                                                    Page 130

1    correctly?

2         A.    Yes.

3         Q.    So sort of a peace of mind?  I mean, you

4    came out of the exam --

5         A.    Yes.

6         Q.    -- you wanted to know --

7         A.    Yes.

8         Q.    Were you trying to profit from

9    communicating with Dr. Arora?

10        A.    No.

11        Q.    Were you trying to cheat in communicating

12   with Dr. Arora?

13        A.    No.  I had already taken the exam.

14        Q.    So it was simply -- You were simply doing

15   it to communicate with your instructor to try to

16   figure out how well you did, right?

17        A.    That's part of my anxiety, yeah.

18        Q.    Any other reason?

19        A.    That's the only reason, to know, to know

20   the answers to these questions.  I really needed to

21   know.  I guess I'm obsessive compulsive.

22        Q.    Did it bother you that that was a

23   violation of your Pledge of Honesty?

24        A.    Did it bother me?

CONFIDENTIAL

Page 131

1      Q.    Yeah.  Did it bother you that you were

2    violating your Pledge of Honesty?

3      A.    I was mad at myself, yeah.  Very, very mad

4    at myself.  It was a lapse in judgment.  I just

5    didn't know that I was harming or that I was in

6    violation of my pledge.

7      Q.    Were there any other conditions in your

8    settlement agreement with Arora, such as -- Not

9    settlement agreement with Arora -- it was your

10   settlement agreement with ABIM, such as how you

11   prepared for future exams or how you communicated

12   with other physicians?  Did you promise -- To give

13   one example.  Did you promise not to share questions

14   with other physicians ever again?

15     MS. JACOBS:  Objection to form.

16   BY THE WITNESS:

17     A.    I promised to follow up my pledge, like

18   every time -- Like whatever is the law in the -- In

19   whatever examination I take in the future, yes, I did

20   sign that I would follow the rules, which means not

21   infringing questions, not sharing questions which are

22   protected by rights, and -- Yeah.

23   BY MR. SCHLAFLY:

24     Q.    Did you promise not to criticize the ABIM?

CONFIDENTIAL

Page 147

```
 1                        CERTIFICATE

 2                            OF

 3              CERTIFIED SHORTHAND REPORTER

 4

 5            I, Trudy G. Gordon, a Certified Shorthand

 6       Reporter of the State of Illinois, CSR License No.

 7       084-004077, do hereby certify:

 8            That previous to the commencement of the

 9       examination of the aforesaid witness, the witness was

10       duly sworn to testify the whole truth concerning the

11       matters herein;

12            That the foregoing deposition transcript

13       was stenographically reported by me and was

14       thereafter reduced to typewriting under my personal

15       direction and constitutes a true and accurate record

16       of the testimony given and the proceedings had at the

17       aforesaid deposition;

18            That the said deposition was taken before me

19       at the time and place specified;

20            That I am not a relative or employee or

21       attorney or counsel for any of the parties herein,

22       nor a relative or employee of such attorney or

23       counsel for any of the parties hereto, nor am I

24       interested directly or indirectly in the outcome of
```

CONFIDENTIAL

Page 148

1    this action.

2         IN WITNESS WHEREOF, I do hereunto set my

3    hand at Chicago, Illinois, this 3rd day of October,

4    2016.

5

6

7    _____

8    TRUDY G. GORDON, CSR

     CSR License No. 084-004077

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Case 2:14-cv-06428-KSH-CLW   Document 212-10   Filed 03/01/24   Page 1 of 23 PageID: 26867

*American Board of Internal Medicine v. Jaime A. Salas Rushford, M.D.*
No. 14-cv-06428-KSH-CLW

# DEFENDANT

# EXHIBIT

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement ("Agreement") is made by and between Geraldine
Luna, M.D. ("Dr. Luna"), and the American Board of Internal Medicine ("ABIM") (collectively,
the "Parties"), and is effective the last date of execution ("Effective Date").

WHEREAS, Dr. Luna obtained her Board Certification in Internal Medicine in
2009;

WHEREAS, physicians who obtain Board Certification from ABIM are required
to uphold the highest standards of professionalism, ethics and integrity;

WHEREAS, ABIM sent a letter to Dr. Luna on June 8, 2010 advising her that
ABIM intended to impose a sanction with respect to her Board Certifications based on the
allegation that she participated in the organization, collection and distribution of ABIM
Examination questions to Dr. Arora and her colleagues after taking the August 2009 Certifying
Examination in Internal Medicine;

WHEREAS, Dr. Luna denies that she intended to subvert the Board Certification
process and has assured ABIM that she will abide by all policies and procedures governing
ABIM Examinations; and

WHEREAS, the Parties have agreed to enter this Settlement Agreement in lieu of
Dr. Luna pursuing further appeals of the recommended sanction;

NOW, THEREFORE, in mutual consideration of the promises and covenants that
hereafter follow, and to completely and finally resolve any and all disputes between them, Dr.
Luna and ABIM hereby agree as follows:

1. **Board Certification Status.** The Parties agree that Dr. Luna's 2009 Certification
Examination results will be invalidated, and that she accordingly will not be Board Certified in
Internal Medicine for a period of at least six months. The period of non-certification shall start

**CONFIDENTIAL**

ABIM003564

on the Effective Date and shall end once Dr. Luna has: (a) passed the Maintenance of Certification Examination in Internal Medicine; (b) completed the requirements for Maintenance of Certification; (c) completed the Community Service requirement set forth in paragraph 3; (d) completed the Ethics Course as set forth in paragraph 4; (e) completed those installment(s) of Restitution that are then due to ABIM as set forth in paragraph 5; and (f) fully complied with the cooperation requirement set forth in paragraph 6. The parties acknowledge and agree that Dr. Luna's period of non-certification shall be voluntary, and does not constitute a disciplinary sanction imposed by ABIM.

2.    **Future ABIM Examinations**. Dr. Luna shall be permitted to apply to register for the Fall 2011 Maintenance of Certification Examination in Internal Medicine. Dr. Luna shall also be permitted to apply to register for the Fall 2011 Certifying Examination in Geriatrics. Upon successfully passing the Maintenance of Certification Examination in Internal Medicine, completing the Community Service set forth in paragraph 3, the Ethics course set forth in paragraph 4, the installment(s) of Restitution then due to ABIM as set forth in paragraph 5, and fully complying with the cooperation requirement set forth in paragraph 6, Dr. Luna will be Board Certified in Internal Medicine in accordance with ABIM's policies in place at the time she passes the Maintenance of Certification Examination in Internal Medicine.

3.    **Community Service**. Dr. Luna voluntarily agrees to complete 50 hours of community service, pursuant to the mutually acceptable community service plan attached to this Agreement as Exhibit A. Dr. Luna shall have 6 months after the Effective Date to complete the community service, including submission for ABIM's review and approval: (i) a statement that she has completed the program, along with an attestation from Dr. Luna's community service preceptor, in the form attached as Exhibit B, that she has satisfactorily performed the community

2

service; and (ii) a 500-1000 word reflective narrative describing the impact that the program has had on her professional growth. The Parties acknowledge and agree that Dr. Luna's participation in community service shall be voluntary, and does not constitute a disciplinary sanction imposed by ABIM.

4.  **Ethics Course.** Within six (6) months of the Effective Date of this Agreement, Dr. Luna shall take and complete the ethics course identified in Exhibit B, and shall submit to ABIM an attestation that she has completed the course along with the certificate evidencing her completion. The Parties acknowledge and agree that Dr. Luna's completion of this ethics course shall be voluntary, and does not constitute a disciplinary sanction imposed by ABIM.

5.  **Restitution.** Dr. Luna shall provide restitution to ABIM in the amount of Fifteen Thousand Dollars ($15,000), which is provided to allow ABIM to recoup costs incurred in connection with this matter. Dr. Luna shall pay ABIM the total sum of $15,000 in the installments set forth below:

> (a)  First payment in the sum of $3,000: on or before July 20, 2011;
>
> (b)  Second payment in the sum of $3,000: on or before September 20, 2011;

and

> (c)  Third payment in the sum of $3,000: on or before November 20, 2011;
>
> (d)  Fourth payment in the sum of $3,000: on or before January 20, 2012;
>
> (e)  Fifth payment in the sum of $3,000: on or before March 20, 2012.

Each payment shall be made to the "American Board of Internal Medicine" and shall be sent on or before the deadlines set forth above to: Vincent J. Mandes, Chief Financial Officer, American Board of Internal Medicine, 510 Walnut St., Suite 1700, Philadelphia, PA 19106, with a copy to: Hara K. Jacobs, Esq, Ballard Spahr LLP, 1735 Market St., 51st Floor, Philadelphia, PA 19103.

3

**CONFIDENTIAL**                                                             **ABIM003566**

The Parties acknowledge and agree that such restitution shall not constitute a fine or disciplinary sanction imposed by ABIM.

6.   **Cooperation.** Dr. Luna agrees to continue to cooperate and to provide truthful and complete information to ABIM in response to any and all requests. Dr. Luna agrees to provide truthful and complete interviews, sworn testimony, written statements, declarations and/or affidavits in pending or future litigation and/or other actions involving a third party as required by ABIM. Dr. Luna agrees to appear for and testify truthfully at proceedings upon reasonable notice by ABIM of not less than one month, provided that any reasonable travel expenses incurred by Dr. Luna are compensated in accordance with the applicable rules of court. The Parties acknowledge and agree that such cooperation shall not constitute a disciplinary sanction imposed by ABIM.

7.   **Representation of Board Certification Status by ABIM.** ABIM shall remove Dr. Luna's prior certification history for Internal Medicine from its website within five (5) business days of the Effective Date of this Agreement, and, for the duration of the period of non-certification referenced in paragraph 1 above, ABIM will represent Dr. Luna's certification status in Internal Medicine on its website as "not certified." Following the elapse of the non-certification period, and provided Dr. Luna successfully passes the Maintenance of Certification Examination in Internal Medicine and timely completes the requirements set forth in Paragraphs 2, 3, 4, 5 and 6, ABIM will represent Dr. Luna's status as "certified" with no reference to Dr. Luna being previously certified in 2009 and no reference to the period of non-certification. If Dr. Luna fails to timely complete such requirements, her Board Certification(s) will be recommended for suspension.

4

**CONFIDENTIAL**                                    **ABIM003567**

8.    **Non-Admission**. The Parties agree that no portion of this Agreement shall be construed as an admission of wrongdoing by either Party.

9.    **No Disciplinary Sanction**. The Parties acknowledge and agree that this Agreement is entered as a mutual settlement of claims, and that no part of this Agreement shall be deemed to constitute a disciplinary sanction by ABIM against Dr. Luna. ABIM shall not consider this Agreement or any of its terms to constitute a voluntary or involuntary disciplinary action or a denial, revocation, suspension, reduction, restriction, limitation, diminution, sanction, reprimand, placement on probation, non-renewal, withdrawal, termination, relinquishment while under investigation, or challenge of Dr. Luna's Board Certification.

10.    **Confidentiality**. The Parties agree that, unless compelled to do so by law, they will not disclose the terms of this Agreement or the contents of ABIM's files regarding its investigation and recommendation regarding Dr. Luna to any persons or entities. Notwithstanding the foregoing, ABIM agrees that it shall provide the agreed upon letter attached hereto as Exhibit D in response to any inquiry by employers, hospitals, third party payors, licensure boards, or any other third party that requests clarification as to Dr. Luna's Board Certification status if made during the period of non-certification referenced in paragraph 1, above. In addition, ABIM shall provide the agreed upon letter attached hereto as Exhibit E in response to any inquiry by employers, hospitals, third party payors, licensure boards, or any other third party that requests clarification as to Dr. Luna's Board Certification status if made at any time after Dr. Luna has successfully passed the Maintenance of Certification Examination in Internal Medicine and timely completed the requirements of paragraphs 2, 3, 4, 5 and 6, above, provided that Dr. Luna's Board Certification status is as stated in Exhibit E at the time of the

5

**CONFIDENTIAL**                                                        ABIM003568

request. ABIM shall not disclose Dr. Luna's name to the media in connection with any statements regarding its investigation into Arora Board Review or other board review practices.

11. **Mutual Release**. Other than to enforce the terms and obligations of this Settlement Agreement, ABIM and Dr. Luna, on their own behalf and on behalf of any person claiming by or through them, hereby remise, release and forever discharge each other and their past, present and future employees, officers, directors, shareholders, attorneys, agents, insurers, parents, subsidiaries, predecessors, successors, trustees, heirs, executors and assigns, of and from any and all claims, rights, demands, controversies, causes of action, suits, obligations, judgments, debts, duties, attorneys' fees, costs, and all other liabilities of any kind or nature whatsoever, whether in law, equity or otherwise, whether known or unknown, suspected or unsuspected, accrued or not accrued, and whether or not asserted, which they ever had, now have or may have in the future for or by reason of any cause, matter or thing whatsoever from the beginning of time to the Effective Date, including, by way of example rather than limitation, any claims arising from Dr. Luna's efforts to become Board Certified or her past communications with Dr. Arora or Arora Board Review.

12. **Representations and Voluntary Action**. The Parties represent that they have read this Agreement; that they have consulted with counsel of their choice; that they understand the contents of this Agreement; that this Agreement has been executed voluntarily; and that the person executing this Agreement on behalf of each respective Party has the authority to do so.

13. **Construction**. The Parties understand and agree that none of them shall be deemed to be the drafter hereof for the purpose of construction or interpretation of this Agreement.

6

**CONFIDENTIAL**                                              **ABIM003569**

14.    **Full Agreement**. This Agreement is intended by the Parties hereto as the final expression of their agreement and as a complete and exclusive statement of the terms and provisions thereof. There are no prior or contemporaneous oral or written agreements modifying, limiting, or expanding the rights and obligations set forth in this Agreement, and this Agreement supersedes any prior agreements, representations, negotiations, or understandings between or among the Parties and their agents, servants, employees, representatives or attorneys. No representations, understandings, or agreements have been made or relied upon in the reaching of this settlement other than those specifically set forth herein. In executing this Agreement, the Parties have relied solely upon their own judgment, beliefs, and knowledge concerning the nature, extent, and duration of their rights and claims hereunder.

15.    **No Oral Modification**. No amendment or modification may be made to this Agreement, unless it is in writing and signed by all Parties.

16.    **Entire Agreement**. This Agreement sets forth the entire agreement of the Parties, and each of the terms of this Agreement are contractual and not a mere recital. Without limitation to the foregoing, the Parties' actions and statements in the course of negotiating this Agreement, including those of their counsel respectively, shall not he used by either Party to modify or interpret the rights, responsibilities, or obligations set forth in this Agreement.

17.    **Governing Law**. This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania, without regard to its rules or principles concerning choice of laws.

18.    **Legality**. In the event that any provision of this Agreement shall be held invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired.

7

**CONFIDENTIAL**                                      **ABIM003570**

19.   **Counterparts.** This Agreement may be executed via facsimile and in one or more counterparts, each of which shall be deemed an original, but all of which together constitute one and the same instrument, binding on the parties.

IN WITNESS THEREOF, AND INTENDING TO BE LEGALLY BOUND, THE PARTIES HAVE EXECUTED THIS AGREEMENT.

GERALDINE LUNA, M.D.                     Date  7/29/11

AMERICAN BOARD OF INTERNAL MEDICINE

By: Lynne O. Langdon                     Date  7/28/11
    Lynn O. Langdon

Title:  Senior Vice President and Chief Operating Officer

8

# EXHIBIT A

**CONFIDENTIAL**

**ABIM003572**

LAW OFFICES
# WACHLER & ASSOCIATES
PROFESSIONAL CORPORATION

ANDREW B. WACHLER
AMY K. FEHN *
ALICIA B. CHANDLER
JENNIFER COLAGIOVANNI
LAURA C. RANGE **
JESSE ADAM MARKOS
CHRISTOPHER J. LANEY

*ALSO ADMITTED IN OHIO
**ALSO ADMITTED IN
  WISCONSIN  ILLINOIS & TEXAS

210 EAST THIRD STREET, SUITE 204
ROYAL OAK, MICHIGAN 48067

TELEPHONE (248) 544-0888
FACSIMILE (248) 544-3111

500 GRISWOLD STREET
SUITE 2400
DETROIT, MICHIGAN 48226

wapc@wachler.com
www.wachler.com
www.racattorneys.com

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE PURSUANT TO FEDERAL RULE OF EVIDENCE 408**

*Sent via E-mail and U.S. Mail*

July 5, 2011

Hara K. Jacobs, Esq.
Ballard Spahr LLP
1735 Market Street, 51ˢᵗ Floor
Philadelphia, PA 19103-7599

> **RE:   Community Service and Ethics Course Proposals**
> **Geraldine Luna, M.D.**
> **ABIM # 297796**

Dear Ms. Jacobs,

Please accept this letter as the community service and ethics course proposals on behalf of our client, Geraldine Luna, M.D. ("Dr. Luna"). With regard to the community service component of resolution, we understand that Dr. Luna is to submit a proposal to ABIM for approval, and that Dr. Luna's proposed community service opportunity must provide a recognized service to the community, consist of an activity that is outside the normal scope of Dr. Luna's typical professional activity, and benefit a single organization. We further understand that Dr. Luna is to designate a preceptor who will confirm his participation upon completion of the requisite hours of community service.

Dr. Luna proposes to complete the requisite 50 hours of community service through the St. Wenceslaus Parish in Chicago, Illinois. As a volunteer, Dr. Luna will assist with the parish's community food bank, Bible study group, general housekeeping duties, and other miscellaneous projects and duties as needed.

**CONFIDENTIAL**                                                                **ABIM003573**

*Community Service and Ethics Course Proposals on Behalf of Geraldine Luna, M.D.*
*July 5, 2011*
*Page 2*

For purposes of your records, the individual at St. Wenceslaus who will oversee Dr. Luna's community service participation will be:

> Deacon Jaime Rios
> 3400 N. Monticello Avenue
> Chicago, Illinois 60618
> (773) 837-7748 (Cell); (773) 588-1135 (Office)

In addition, it is our understanding that Dr. Luna is to submit information regarding the ethics course that she would like to take for purposes of resolution with ABIM. To this end, we propose that Dr. Luna complete the following ethics course:

> http://www.nefce.com/courseoverview.php?courseid=705

We hope that this service opportunity and the ethics modules will be acceptable to ABIM. If you have any questions, please do not hesitate to contact us.

Very Truly Yours,

WACHLER & ASSOCIATES, P.C.

Andrew B. Wachler, Esq.
Christopher J. Laney, Esq.

cc:  Geraldine Luna, M.D.

**CONFIDENTIAL**

**ABIM003574**

# EXHIBIT B

**CONFIDENTIAL**

**ABIM003575**

**Preceptor Agreement to Attest Form**

Name of Physician: _____

ABIM# (to be completed by Physician): _____

Preceptor Name: _____

Title: _____

Organization: _____

Street: _____

City, State, Zip Code: _____

Phone Number: _____

Email: _____

Describe your relationship to the physician:

_____

_____

_____

Describe the community service activity:

_____

_____

_____

Your role (if any) in the community service activity:

_____

_____

_____

I hereby confirm that I agree to serve as a preceptor for the above-named physician, As part of my responsibilities as a preceptor, I also agree to:

a)  Monitor the physician's community service activities throughout the six month period;
b)  Convene intermittent meetings with the physicians to discuss his/her progress;
c)  Agree to provide an assessment to ABIM at the end of the community service period regarding whether or not the physician has successfully completed the community service requirement

_____        _____
              Signature                                              Date

┌─────────────────────────────┐
│   Fax your completed and    │
│  signed attestation form to:│
│        215-446-3624         │
└─────────────────────────────┘

**CONFIDENTIAL**                        **ABIM003576**

# EXHIBIT C

**CONFIDENTIAL**                                   **ABIM003577**

NetCE - Course Detail - Course #4717: Medical Ethics for Physicians          Page 1 of 4



## Courses

### Course Detail

**Overview**  **Content**  **Complete for Credit**  **Learning Tools**

Add this course to My Order
Course Participation Instructions

▶ **READ** course content     ▶ **COMPLETE** for credit     ▶ **PURCHASE** now

### Course # 4717 • Medical Ethics for Physicians
✉ Email a friend

**Overview:**
Medical ethics, also known as bioethics, is an amalgam of medicine, law, and religion. It is also influenced by cultural beliefs. In this course, we will define the most common ethical principles and note their relationship to the basic theories of ethics. Some of the prominent court cases that have dictated the basis of physician-patient relationships, especially in end-of-life care, are presented. Also, the Patient Self-Determination Act is outlined with explanations of advance directives--better known as physician directives and durable power of attorney for health care. Finally, a possible method of setting up a workable ethical decision-making framework is presented in some detail. Hopefully this will be useful in the event of a conflict or when a decision involving ethical issues confronts us or our fellow physicians. This course should allow us to comprehend the basic precepts of medical ethics and afford us the general knowledge of how to apply them in our everyday practice of medicine.

**Education Category: Ethics - Human Rights**

**Release Date: 02/01/2011**

**Expiration Date: 01/31/2014**

**Attention:**
This course meets the qualifications for 2 hours of continuing education credit in Medical Ethics as required by the Nevada Board of Medical Examiners.

This course meets the qualifications for 1 hour of continuing education credit in Medical Ethics as required by the Texas Medical Board.

**Audience:**
This course is designed for physicians and interested healthcare professionals.

**Designations of Credit:**
CME Resource designates this enduring material for a maximum of 5 *AMA PRA Category 1 Credit(s)*. Physicians should claim only the credit commensurate with the extent of their participation in the activity.

**Learning Tools:**
Use these tools to enrich your *learning experience!*



View the Evidence-Based Practice Recommendations to determine the validity or relevance of the information.

MUST COMPLETE



**SELF ASSESSMENT** Assess your retention of the subject matter with these helpful questions. See your score at the end. This self-assessment is optional. *read real*

**Study Points** Use this objective-based question and answer exercise to enhance your course knowledge.

**Special Approvals:**
This course meets the qualifications for 2 hours of continuing education credit in Medical Ethics as required by the Nevada Board of Medical Examiners. This course meets the qualifications for 1 hour of continuing education credit in Medical Ethics as required by the Texas Medical Board. This activity is designed to comply with the requirements of California Assembly Bill 1195, Cultural and Linguistic Competency.

**Course Objective:**
The purpose of this course is to briefly review the history, theory, and practical issues of ethics as related to healthcare. Some states have felt that this subject is important enough to require all physicians to obtain continuing education credits in medical ethics.

**Learning Objectives:**

http://www.netce.com/courseoverview.php?courseid=705          2/25/2011

**CONFIDENTIAL**          **ABIM003578**

NetCE - Course Detail - Course #4717: Medical Ethics for Physicians                    Page 2 of 4

1. Outline the history of bioethics, including the evolution of the physician-patient relationship.
2. Discuss the Karen Ann Quinlan and Nancy Cruzan cases as they influenced national and state healthcare policies.
3. State the purpose of the Patient Self-Determination Act (PSDA) of 1990 and the role of healthcare professionals.
4. Differentiate between the types of advance directives.
5. Discuss the national ethical standards frameworks and their relationship to ethical decision making for patients.
6. Define terminology regarding bioethics, including the principles guiding medical ethical decision making.
7. Compare and contrast various ethical theories as they relate to health care.
8. Describe elements of setting up a workable ethical decision-making framework.

**Faculty:**
Michele Nichols, RN, BSN, MA, received her Associates Degree in Nursing in 1977, her Bachelor of Science Degree in Nursing in 1981 and obtained her Master of Arts Degree in Ethics and Policy Studies in 1990 through the University of Nevada, Las Vegas. She was Chief Nurse Executive at Valley Hospital Medical Center in Las Vegas, Nevada. Currently, Ms. Nichols is the System Director for the Valley Health System University, a five hospital system in Las Vegas, Nevada.

John M. Leonard, MD, Professor of Medicine, Vanderbilt University School of Medicine. Dr. Leonard completed his post-graduate clinical training at the Yale and Vanderbilt University Medical Centers, and then joined the Vanderbilt faculty in 1974. He has served as director of educational programs for the Department of Medicine and was the Residency Program Director from 1981 to 2003. Dr. Leonard attends and consults on the in-patient general medicine and infectious disease service.

**Division Planner(s):**
Ronald Runciman, MD

**Faculty Disclosure**
Contributing faculty, Michele Nichols, RN, BSN, MA, has disclosed no relevant financial relationship with any product manufacturer or service provider mentioned.

Contributing faculty, John M. Leonard, MD, has disclosed no relevant financial relationship with any product manufacturer or service provider mentioned.

**Division Planner Disclosure**
The division planner has disclosed no relevant financial relationship with any product manufacturer or service provider mentioned.

**About the Sponsor**
The purpose of CME Resource is to provide challenging curricula to assist healthcare professionals to raise their levels of expertise while fulfilling their continuing education requirements, thereby improving the quality of healthcare.

Our contributing faculty members have taken care to ensure that the information and recommendations are accurate and compatible with the standards generally accepted at the time of publication. The publisher disclaims any liability, loss or damage incurred as a consequence, directly or indirectly, of the use and application of any of the contents. Participants are cautioned about the potential risk of using limited knowledge when integrating new techniques into practice.

**Disclosure Statement**
It is the policy of CME Resource not to accept commercial support.

**Contents:**
1. INTRODUCTION
2. BRIEF HISTORY OF BIOETHICS
3. LANDMARK COURT CASES
4. PATIENT SELF-DETERMINATION ACT (PSDA) OF 1990
5. DEFINITIONS OF ETHICAL PRINCIPLES
6. ETHICS AND THE DECISION-MAKING PROCESS
7. ETHICAL THEORETICAL SYSTEMS
8. PRACTICAL APPLICATION OF ETHICAL THEORIES
9. SETTING UP A WORKABLE ETHICAL DECISION- MAKING FRAMEWORK
10. PHYSICIAN-ASSISTED EUTHANASIA
11. AMA CODE OF ETHICS
12. CONCLUSION
13. RESOURCES
14. WORKS CITED

CONFIDENTIAL                                                        ABIM003579

NetCE - Course Detail - Course #4717: Medical Ethics for Physicians                    Page 3 of 4

15. **EVIDENCE-BASED PRACTICE RECOMMENDATIONS CITATIONS**

**CONFIDENTIAL**
**ABIM003580**

Case 2:14-cv-06428-KSH-CLW   Document 212-10   Filed 03/01/24   Page 19 of 23 PageID: 26885

NetCE - Course Detail - Course #4717: Medical Ethics for Physicians

**Technical Requirements**
Supported browsers for Windows include Microsoft Internet Explorer 5.0 and up, Mozilla Firefox 1.0 and up, Opera 8.0 and up, and Netscape 7.2 and up. Supported browsers for Macintosh include Safari, Mozilla Firefox 1.0 and up, Opera 8.0 and up, iCab 3.0.3 and up, and Netscape 7.2 and up. Other operating systems and browsers that include complete implementations of ECMAScript edition 3 and CSS 2.0 may work, but are not supported.

Download Course as Adobe PDF
Email a friend

▶ **COMPLETE** for credit

back to top

Login          Groups          Questions          Privacy Policy          Terms of Use          Contact Us          Permissions

**CONFIDENTIAL**

**ABIM003581**

# EXHIBIT D

**CONFIDENTIAL**                                        **ABIM003582**

**EXHIBIT D**

[Date to be Determined]

_____
_____
_____

      **Re:**    **Board Certification Status**

Dear _____:

This is in response to your inquiry concerning the American Board of Internal Medicine (ABIM) Board Certification status and history of Geraldine Luna, M.D.  Dr. Luna's Board Certification status in Internal Medicine is "not certified."

By agreement dated July ___, 2011, ABIM and Dr. Luna amicably resolved past issues concerning Dr. Luna's Board Certification status and history.  ABIM does not consider the agreement or any of its terms to constitute a disciplinary action against Dr. Luna, or a suspension, revocation or annulment of a Board Certification.

_____
On Behalf of the American Board of Internal Medicine

9

**ABIM003583**

# EXHIBIT E

CONFIDENTIAL

ABIM003584

**EXHIBIT E**

[Date to be Determined]

_____
_____
_____

     **Re:**   **Board Certification Status**

Dear _____:

This letter serves as a response to your request for clarification of Geraldine Luna, M.D.'s Board Certification status. Dr. Luna is currently certified by the American Board of Internal Medicine in Internal Medicine, and her Board Certification has been in effect without interruption since its inception. At no time has Dr. Luna's Board Certification been subject to any form of disciplinary sanction.

Sincerely,


_____
On Behalf of the American Board of Internal Medicine

10

**CONFIDENTIAL**

**ABIM003585**

Case 2:14-cv-06428-KSH-CLW   Document 212-11   Filed 03/01/24   Page 1 of 2 PageID: 26890

*American Board of Internal Medicine v. Jaime A. Salas Rushford, M.D.*
No. 14-cv-06428-KSH-CLW

# DEFENDANT

# EXHIBIT

**Jacobs, Hara K.  (Phila)**

| | |
|---|---|
| **From:** | Jacobs, Hara K.  (Phila) |
| **Sent:** | Thursday, January 12, 2012 12:22 PM |
| **To:** | Chris Laney |
| **Cc:** | 'Andrew Wachler' |
| **Subject:** | Dr. Luna |
| | |
| **Importance:** | High |

Chris,

I strongly recommend that you call me immediately.  Your client did not tell the truth during her interview.  As you and I discussed, if I get to the bottom of this before your client gives a truthful interview, she is in breach of her duty to cooperate and her settlement agreement.  I am about 10 minutes away confirming that the questions on the handwritten document match the questions that appeared on Dr. Luna's exam and that she provided to Dr. Arora in her successive emails.

Regards,

Hara

---

**Hara K. Jacobs**
Ballard Spahr LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103-7599
Direct:  215.864.8209
Fax:  215.864.8999
jacobsh@ballardspahr.com | www.ballardspahr.com

**CONFIDENTIAL**

1

**ABIM03107**

*American Board of Internal Medicine v. Jaime A. Salas Rushford, M.D.*
No. 14-cv-06428-KSH-CLW

# DEFENDANT

# EXHIBIT

1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
2              CIVIL ACTION NO. 14-cv-06428-KSH-CLW

3

4    - - - - - - - - - - - - :
     AMERICAN BOARD OF             :
5    INTERNAL MEDICINE,            :   DEPOSITION UPON
              Plaintiff,           :   ORAL EXAMINATION
6                                  :       OF:
              vs.                  :   ARIEL BENJAMIN MANNES
7                                  :
     JAIME A. SALAS-RUSHFORD,:
8    M.D.,                         :
              Defendant.           :
9    - - - - - - - - - - - - :

10

11

12          T R A N S C R I P T of the above-entitled

13   matter, by and before Catherine A. Cocozza, a

14   Registered Professional Reporter and a Certified

15   Shorthand Reporter, at the offices of Thomas G.

16   Oakes Associates, 535 Route 38 East, Cherry Hill,

17   New Jersey, on Wednesday, June 29, 2016, at

18   10:07 a.m.
                                        ORIGINAL
19

20

21          REPORTING SERVICES ARRANGED THROUGH

22            THOMAS G. OAKES ASSOCIATES
                National Court Reporting &
23             Litigation Support Services
         Phone:  1.877.OAKES.77  Fax:  1.888.344.3778
24                 www.tgoakes.com

25
```

```
                                                                    2
 1   A P P E A R A N C E S:

 2
          BALLARD SPAHR LLP
 3        210 Lake Drive East, Suite 200
          Cherry Hill, New Jersey  08002-1163
 4        BY:  HARA K. JACOBS, ESQ.
               ROBERTO A. RIVERA-SOTO, ESQ.
 5             jacobsh@ballardspahr.com
          Attorneys for Plaintiff
 6

 7        LAW OFFICE OF ANDREW L. SCHLAFLY
          939 Old Chester Road
 8        Far Hills, New Jersey  07931
          BY:  ANDREW L. SCHLAFLY, ESQ.
 9             aschlafly@aol.com
          Attorney for Defendant
10
     ALSO PRESENT:  Guillermo L. Mena-Irizarry, Attorney
11                    for Dr. Salas-Rushford
                     Jaime A. Salas-Soler, Attorney
12                    for Dr. Salas-Rushford
                     Dr. Jaime Antonio Salas-Rushford
13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1
 2                         I N D E X
    WITNESS                                    PAGE
 3
    ARIEL BENJAMIN MANNES
 4
    BY:      Mr. Schlafly                        4
 5
 6
 7
 8                       E X H I B I T S
 9  EXHIBIT                                     PAGE
10  Mannes 1    Notice of Deposition             4
    Mannes 2    (Confidential document)         22
11  Mannes 3    (Confidential document)         24
    Mannes 4    (Confidential document)         26
12  Mannes 5    A. Benjamin Mannes presentation
                    sheet                       49
13  Mannes 6    5/8/12 ABIM letter to
                    Dr. Salas-Rushford          82
14  Mannes 7    Linkedin profile of
                    A. Benjamin Mannes          95
15  Mannes 8    Filmography of A. Benjamin Mannes 101
    Mannes 9    "Exam Integrity 101: Part 1 -
16                  Prevention" course         104
    Mannes 10   Infragard website article      107
17  Mannes 11   1/2/14 e-mail to Fisher
                    from Mannes                113
18
19       CONFIDENTIAL TESTIMONY
       PAGE/LINE
20    7/3  Through 7/17
21     16/25  Through 34/25
22     50/6 Through 53/7
23     72/18  Through 82/23
24    110/15  Through 110/18
25    113/15  Through 116/1
```

**Thomas G. Oakes Associates**
**1-877-625-3777      www.TGOakes.com**

JA11661

```
        Ariel Benjamin Mannes - Confidential              4
1               ...ARIEL BENJAMIN MANNES, having been
2  duly sworn, was examined and testified as follows:
3  BY MR. SCHLAFLY:
4  Q.      Please state your full name for the record.
5  A.      Ariel Benjamin Mannes.
6  Q.      And how do you spell your last name?
7  A.      M-A-N-N-E-S.
8          (Exhibit Mannes 1 marked for identification.)
9  BY MR. SCHLAFLY:
10 Q.      I'd like to introduce Mannes Exhibit 1 for
11 you to take a look at.
12         Have you seen that Notice of Deposition
13 before?
14 A.      Yep.
15 Q.      You are here answering questions pursuant
16 to this Notice of Deposition?
17 A.      Yep.
18 Q.      Have you ever been deposed before?
19 A.      Nope.
20 Q.      Do you understand the process of being
21 deposed, I'll ask you questions and you answer the
22 questions truthfully under oath?
23 A.      Yes, sir.
24 Q.      Are you under any medication at this time?
25 A.      No.
```

Case 2:14-cv-06428-KSH-CLW   Document 212-12   Filed 03/01/24   Page 6 of 14 PageID: 26897

Ariel Benjamin Mannes - Confidential                    5

1              (Discussion held off the record

2    between the witness and his counsel.)

3              MR. SCHLAFLY:  The deposition started.

4              MS. JACOBS:  I understand.

5    A.    I take a daily pill for my blood and my

6    heartburn.  I didn't think that normally would come

7    up when people ask you if you're under medication.

8    It usually means psychotropics.

9    Q.    Would that medication affect your ability

10   to answer truthfully?

11   A.    Absolutely not.

12   Q.    What is your current position at the

13   American Board of Internal Medicine?

14   A.    Director, Office of Investigations.

15   Q.    Are you an employee in that position?

16   A.    Yes.

17   Q.    And are you the first person to hold that

18   position?

19   A.    Yes, I am.

20   Q.    Did you apply for that job with the ABIM?

21   A.    Yes.

22   Q.    Did you apply in writing?

23   A.    Yes.

24   Q.    And when was that?

25   A.    2008, June of -- well, May -- when I

Ariel Benjamin Mannes - Confidential                    22

1  we're marking it as confidential.  And we will deal

2  with it later, as it's a party's decision to mark it

3  as confidential.  Once done so, it is confidential

4  unless the Court says otherwise.  That's the

5  arrangement.

6              MR. SCHLAFLY:  I'd like to mark this

7  as Mannes Exhibit 2.

8          (Exhibit Mannes 2 marked for identification.)

9              MR. RIVERA-SOTO:  Ma'am, could you

10 please keep the confidentiality until you're told

11 otherwise.

12             THE REPORTER:  Yes.

13 BY MR. SCHLAFLY:

14 Q.      Before we get to Mannes Exhibit 2, were you

15 in fact suspended by the D.C. Police Force?

16 A.      Before this happened, yes.

17 Q.      And were they going to fire you?

18             MS. JACOBS:  Objection to form.

19 A.      They tried to fire me.

20 Q.      And they tried to fire you because you

21 abused your authority as a police officer?

22             MS. JACOBS:  Objection to form.  If

23 you know why they tried to fire you.

24 A.      Yes.

25 Q.      Okay.  Why did they try to fire you?

```
                    Ariel Benjamin Mannes - Confidential            23
```

1    A.      I had posted a blog with information on it.

2    Q.      With personal information; wasn't it?

3    A.      Yes.

4    Q.      And it was improper; wasn't it?

5            MS. JACOBS:  Objection to form.

6    A.      Yes.

7    Q.      Did you disclose that to ABIM?

8    A.      I disclosed relevant information pertinent

9    to my hiring to ABIM.

10   Q.      That's not what I asked.

11           Did you disclose those facts to ABIM as

12   part of your application process?

13   A.      I don't recall.

14   Q.      I'd like you to look at Mannes Exhibit 2.

15           MR. RIVERA-SOTO:  This exhibit also is

16   subject to the confidentiality, not only the

17   testimony, but the exhibit itself.

18           MR. SCHLAFLY:  This is publicly

19   available information.

20           MR. RIVERA-SOTO:  You can say what you

21   want, but it's marked as confidential.

22           MR. SCHLAFLY:  It's totally

23   inappropriate.

24           MR. RIVERA-SOTO:  Do you really think

25   that's persuasive?

Ariel Benjamin Mannes - Confidential                     24

1              MR. SCHLAFLY:  Yes.

2              MR. RIVERA-SOTO:  That's awfully

3    childish.

4         It's marked as confidential.  It will be

5    confidential until the Court says differently.

6    BY MR. SCHLAFLY:

7    Q.     Is that a correct description of your

8    criminal background?

9              MS. JACOBS:  Objection to form.

10   A.     Not completely.

11   Q.     What's incorrect about it or incomplete

12   about it?

13   A.      It fails to disclose anything following

14   this record in the D.C. Court.

15   Q.      And what information following this record

16   to the D.C. Court do you think that should be there?

17   A.      A full reinstatement to the Metropolitan

18   Police Department retroactive effective 2007 and the

19   fact that the CPWL gun law that is on here was

20   challenged and overturned in Supreme Court and

21   upheld twice thereafter.

22              MR. SCHLAFLY:  I'd like to introduce

23   this as Mannes Exhibit 3.

24         (Exhibit Mannes 3 marked for identification.)

25   BY MR. SCHLAFLY:

```
                Ariel Benjamin Mannes - Confidential          25
 1   Q.      Mannes Exhibit 3 is an article from "The
 2   Washington Post" dated May 24th, 2008, entitled
 3   "D.C. Trying to Again Fire 17 Rehired Police
 4   Officers".
 5           Were you one of the 17 rehired police
 6   officers described in this article?
 7   A.      I believe so.
 8   Q.      And does this describe the scenario by
 9   which you say that you were reinstated by the D.C.
10   Police Force?
11               MS. JACOBS:  Objection to form.  Does
12   what?
13               MR. SCHLAFLY:  The article.
14   A.      The article --
15               MS. JACOBS:  You're asking him to
16   testify about the article?
17               MR. SCHLAFLY:  Yes, whether it
18   describes the reinstatement of Mr. Mannes by the
19   D.C. Police.
20               MS. JACOBS:  You're asking him whether
21   this accurately describes his reinstatement by the
22   D.C. Police Force?
23               MR. SCHLAFLY:  I'll be more specific.
24   BY MR. SCHLAFLY:
25   Q.      Did the D.C. Police Force reinstate you
```

```
                 Ariel Benjamin Mannes - Confidential          26

 1   based on a technicality?

 2                 MS. JACOBS:  Objection to form.

 3   A.      Yes.

 4   Q.      You can answer.

 5   A.      The D.C. Police reinstated me.  There were

 6   several grounds in the application.  The first one

 7   the obvious technicality was what they chose.

 8   Q.      In fact, the D.C. Police Force attempted to

 9   fire you again; didn't they?

10                 MS. JACOBS:  Objection to form.

11   A.      Yes, they did.

12   Q.      And did you resign before you were fired?

13   A.      I came to a settlement agreement with them.

14                 MR. RIVERA-SOTO:  Exhibit 3 is also

15   marked as confidential.

16   Q.      If you'd turn to the last page of Exhibit 3.

17   A.      I only have two pages, sir.

18                 MR. SCHLAFLY:  I'd like to introduce

19   this as Exhibit 4.

20          (Exhibit Mannes 4 marked for identification.)

21   BY MR. SCHLAFLY:

22   Q.      I'm going to ask you if that paragraph on

23   the last page is a correct description of the action

24   taken by the D.C. Police against you?

25   A.      You're asking me if this is accurate?
```

```
           Ariel Benjamin Mannes - Confidential          27
 1  Q.     Yes.
 2  A.     Not completely.
 3  Q.     What do you feel is incomplete about this?
 4  A.     You're asking if one paragraph sums up a
 5  two-year investigation.
 6  Q.     Let me ask if there's anything incorrect
 7  about it?
 8  A.     The action was taken in 2003.  I was
 9  investigated prior to that.  It wasn't a law
10  enforcement website.  It was a Yahoo group.  The
11  rest is accurate.
12  Q.     Let the record reflect that Exhibit 4 is an
13  article from "The Washington Post" dated May 20,
14  2008, entitled "17 Officers Fired for Misconduct
15  Reinstated".
16              MR. RIVERA-SOTO:  And the
17  confidentiality designation applies to Exhibit 4
18  also.
19  BY MR. SCHLAFLY:
20  Q.     What is the name of the Yahoo group that
21  you posted to?
22  A.     I don't remember.
23  Q.     Did you disclose to the ABIM that you had
24  posted this personal information to the Yahoo group?
25              MS. JACOBS:  Objection to form.
```

```
                    Ariel Benjamin Mannes - Confidential              116

 1                 THE WITNESS:  Yes.  Thank you.

 2                 MR. SCHLAFLY:  Let's take a short

 3      break.  I think I'm almost finished.

 4                 (Break taken.)

 5      BY MR. SCHLAFLY:

 6      Q.     Mr. Mannes, do you have any medical

 7      education in your background?

 8      A.     Aside from being CPR and first aid

 9      certified, no.

10                 MR. SCHLAFLY:  No further questions.

11                 MS. JACOBS:  We have no questions.

12                 (The deposition concluded at 1:08 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

117

```
 1                  C E R T I F I C A T E
 2
 3              I, Catherine A. Cocozza, a Certified
 4    Shorthand Reporter and a Registered Professional
 5    Reporter, do hereby certify that prior to the
 6    commencement of the examination, the witness was
 7    duly sworn by me.
 8              I DO FURTHER CERTIFY that the
 9    foregoing is a true and accurate computer-aided
10    transcript of the testimony as taken
11    stenographically by and before me at the date, time
12    and place aforementioned.
13              I DO FURTHER CERTIFY that I am
14    neither a relative nor employee, nor attorney or
15    counsel to any parties involved; that I am neither
16    related to nor employed by any such attorney or
17    counsel, and that I am not interested in the event
18    nor outcome of this litigation.
19
20
21
22    _____
23    CATHERINE A. COCOZZA, Certified Shorthand Reporter
24    NJ C.S.R. License No. XI00978
25
```

**Thomas G. Oakes Associates**
**1-877-625-3777        www.TGOakes.com**

*American Board of Internal Medicine v. Jaime A. Salas Rushford, M.D.*
No. 14-cv-06428-KSH-CLW

# DEFENDANT

# EXHIBIT

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AMERICAN BOARD OF INTERNAL MEDICINE,** | ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) <br> ) **Civil Action** |
| **vs.** | ) <br> ) **14-cv-06428-KSH-CLW** |
| **JAIME A. "JIMMY" SALAS RUSHFORD, M.D.,** | ) <br> ) <br> ) |
| **Defendant.** | ) <br> ) <br> ) |

**DECLARATION OF WESTBY G. FISHER, M.D., FACC**

I, Westby G. Fisher, M.D., FACC, hereby declares the following:

1.      I am a licensed practicing physician who is fully competent to provide testimony, and will be available to testify at trial as may be desired. I have personal knowledge of the following.

2.      I submitted two expert reports in this matter, one of which was a response to an expert report submitted by the Plaintiff American Board of Internal Medicine. My initial expert report was signed by me and dated October 17, 2016, and docketed in this case as D.E. 134-7. My response expert report was signed by me and dated November 17, 2016, and docketed in this case as D.E. 142-2.

3.      To the best of my knowledge, my statements in both of my above-referenced expert reports are correct as to the facts and as to my opinions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 28, 2024

_Westby G. Fisher MD_
_____

Westby G. Fisher, M.D., FACC

Case 2:14-cv-06428-KSH-CLW   Document 212-14   Filed 03/01/24   Page 1 of 1 PageID: 26908

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

M   C N          N   N L
M   C N



                              C v   c o
v .
                              14-cv-06428-KSH-CLW

  M   .  MM   S L S
  SH      M. .
                              r   r      r      d
        d    .


**[PROPOSED] ORDER**

**THIS MATTER**  v       ro    o        o o   Co r        d
     . S        ord M. .       or o   Cro -Mo o  or S    r   d
  d  o  o  o  o   Mo o  or S   r   d              r c   o rd o
  r  M d c     M   d r   Co r      c

  **AND**     Co r   v   r d  d co  d r d   d r        co      d
     o   o  o   o   r o   d   c  d  d  o  v   rd or  r

  **AND**  or  ood c     o      r

  **IT IS**        d  o               2024   r   **ORDERED**
     d  S       ord  Cro -Mo o  or S   r   d   **is granted**  d
     M  Mo o  or S   r   d   **is denied**.  d  S        ord
  r   d    60 d   ro      r  o   ord r o        r     or co      d
  or        r   o   Co r    c o   d    d c   ro
     M.


                         Ho . K    r   S. H  d    .S. . .

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE, | : <br> : |
| | :   Civil Action No. 14-cv-06428-KSH-CLW |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| | :   **Oral Argument Requested** |
| JAIME ANTONIO SALAS RUSHFORD, M.D., | : <br> : |
| Defendant. | : |

**MEMORANDUM IN FURTHER SUPPORT OF ABIM'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**Ballard Spahr LLP
A Pennsylvania Limited Liability Partnership**
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002-1163
Tel. 856.761.3400

Attorneys for Plaintiff,
American Board of Internal Medicine

## TABLE OF CONTENTS

*Page*

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 3

     A.     ABIM Proved Valid Ownership of Its Copyrights .................................. 3

     B.     ABIM Proved Copying by Defendant ...................................................... 7

         1.     Dr. Salas Rushford Cannot Refute ABIM's Direct Evidence.................... 7

         2.     Dr. Salas Rushford Cannot Refute ABIM's Indirect Evidence ............... 10

     C.     Dr. Ward's Expert Report Is Admissible, Conclusive Evidence ......................... 15

     D.     ABIM Exam Questions Are Protected Expressions and Not Subject to the *Scènes à Faire* Doctrine ........................................................................ 21

     E.     The Copyright Act Entitles ABIM to Statutory Damages and ABIM Need Not Prove Actual Damages........................................................................ 24

     F.     ABIM Diligently Investigated Dr. Salas Rushford's Identity, which Dr. Salas Had Intentionally Concealed, and Timely Filed this Action ....................... 27

III.   CONCLUSION ................................................................................................ 30

i

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*A.S. v. Ocean Cty. Fire Acad.*,
No. 19-11306, 2020 U.S. Dist. LEXIS 55075 (D.N.J. Mar. 30, 2020)......................................6

*ABIM v. Salas Rushford*,
841 Fed. Appx. 440 (3d Cir. 2020)........................................................................27, 28, 29, 30

*Adriana's Ins. Servs. Inc. v. Auto Int'l Ins. Agency, Inc.*,
No. 8:22-cv-00174, 2023 U.S. Dist. LEXIS 208056 (C.D. Cal. Aug. 18, 2023) ...............6, 21

*Am. Registry of Radiologic Technologists v. Bennett*,
No. SA-12-CV-109, 2013 U.S. Dist. LEXIS 120548 (W.D. Tex. Aug. 26,
2013) ...................................................................................................................................10, 12

*Amo Dev., LLC v. Alcon Vision, LLC*,
No. 20-842-CFC, 2022 U.S. Dist. LEXIS 219368 (D. Del. Dec. 6, 2022)..............................26

*Arica Inst., Inc. v. Palmer*,
970 F.2d 1067 (2d Cir. 1992)....................................................................................................10

*Assessment Technologies Inst., LLC v. Parkes*,
588 F. Supp. 3d 1178 (D. Kan. 2022).......................................................................................14

*Beatty v. Twp. of Elk*,
No. 08-2235, 2010 U.S. Dist. LEXIS 36673 (D.N.J. Apr. 14, 2010) .........................................6

*Bell v. Taylor*,
827 F.3d 699 (7th Cir. 2016) ....................................................................................................25

*Bentzley v. Medtronic, Inc.*,
827 F. Supp. 2d 443 (E.D. Pa. 2011) .......................................................................................10

*Cetel v. Kirwan Fin. Grp., Inc.*,
460 F.3d 494 (3d Cir. 2006)................................................................................................28, 30

*Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*,
259 F.3d 1186 (9th Cir. 2001) ..................................................................................................24

*Dam Things from Den. v. Russ Berrie & Co.*,
290 F.3d 548 (3d Cir. 2002).......................................................................................................3

*Dartez v. Peters*,
No. 15-3255, 2018 U.S. Dist. LEXIS 33992 (D. Kan. Mar. 2, 2018) .......................................28

*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015) ............................................................................8

*Educ. Testing Serv. v. Simon*,
   95 F. Supp. 2d 1081 (C.D. Cal. 1999) ................................................................11

*Education Testing Services v. Katzman*,
   793 F.2d 533 (3d Cir. 1986)......................................................................... *passim*

*Energy Intelligence Grp. v. United Steel, Paper & Forestry, Rubber, Mfg.,*
   *Energy, Allied Indus., & Serv. Workers Int'l Union, AFL-CIO/CLC*,
   No. 11-428, 2013 U.S. Dist. LEXIS 123080 (W.D. Pa. Aug. 29, 2013) ................29

*Feltner v. Columbia Pictures Television*,
   523 U.S. 340 (1998).............................................................................................26

*Fonovisa, Inc. v. Merino*,
   No. 06-3538, 2006 U.S. Dist. LEXIS 89212 (D.N.J. Nov. 27, 2006) ...................24

*Gaiman v. McFarlane*,
   360 F.3d 644 (7th Cir. 2004) .............................................................................29

*Gilmore v. Davis*,
   185 F. Appx 476 (6th Cir. 2006).........................................................................29

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)............................................................................................15

*Jarvis v. A&M Records*,
   827 F. Supp. 282 (D.N.J. 1993) .........................................................................11

*Kay Berry, Inc v. Taylor Gifts, Inc.*,
   421 F.3d 199 (3d Cir. 2005).........................................................................21, 23

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*,
   12 F.3d 527 (5th Cir. 1994) ...............................................................................10

*Kev & Cooper L.L.C. v. Gladwell Educ. Ltd. Liab. Co.*,
   No. 22-2029, 2023 U.S. Dist. LEXIS 31842 (D.N.J. Feb. 27, 2023) .....................5

*Kumar v. Inst. of Elec. & Elecs. Engineers, Inc.*,
   No. 12-6870, 2013 WL 5467090 (D.N.J. Sept. 30, 2013) (Hayden, J.) ................23

*Masquerade Novelty, Inc. v. Unique Indus.*,
   912 F.2d 663 (3d Cir. 1990)..................................................................................4

*Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp.*,
   05 Civ. 8665, 2008 U.S. Dist. LEXIS 76899 (S.D.N.Y. Sept. 30, 2008)...............23

*Melendez v. Target Corp.*,
No. 2:18-CV-09405, 2022 U.S. Dist. LEXIS 91902 (D.N.J. May 23, 2022) .........................15

*Nat'l Bd. of Med. Exam'rs v. Optima Univ. LLC*,
No. 1:09-cv-01043-JDB-cgc, 2011 U.S. Dist. LEXIS 143645 (W.D. Tenn.
Sep. 29, 2011) ...............................................................................................................................4

*Nat'l Conf. of Bar Examiners v. Multistate Legal Studies, Inc.*,
458 F. Supp. 2d 252 (E.D. Pa. 2006) ...............................................................................15, 23

*Pearson Educ., Inc. v. Chegg, Inc.*,
No. 21-16866, 2023 U.S. Dist. LEXIS 85210 (D.N.J. May 16, 2023) ...................................13

*Perry v. Sonic Graphic Sys.*,
94 F. Supp. 2d 616 (E.D. Pa. 2000) .......................................................................................26

*Playboy Enters., Inc. v. Dumas*,
53 F.3d 549 (2d Cir. 1995).........................................................................................................5

*Poppington LLC v. Brooks*,
No. 20-cv-8616, 2022 U.S. Dist. LEXIS 105311 (S.D.N.Y. June 13, 2022) .........................25

*Robinson v. Morrow*,
99 P.3d 341 (Utah Ct. App. 2004) ..........................................................................................30

*Smith v. Thomas*,
911 F.3d 378 (6th Cir. 2018) ..................................................................................................25

*Sohm v. Scholastic*,
959 F.3d 39 (2d Cir. 2020).......................................................................................................26

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
863 F. Supp. 2d 394 (D.N.J. 2012) .......................................................................................6, 7

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
595 U.S. 178, 142 S. Ct. 941 (2022).........................................................................................4

*Whelan Assocs. v. Jaslow Dental Lab., Inc.*,
797 F.2d 1222 (3d Cir. 1986), *cert. denied*, 479 U.S. 1031 (1987)......................17, 21, 22, 23

*Winoff Indus. v. Stone Container Corp.* (*In re Linerboard Antitrust Litig.*),
305 F.3d 145 (3d Cir. 2002), *cert. denied*, 538 U.S. 977 (2003)............................................30

**Statutes**

17 U.S.C. § 410(c) ...............................................................................................................3, 4

Copyright Act..............................................................................................................2, 5, 12, 24

17 U.S.C. § 411 .................................................................................................4

17 U.S.C. § 504(c) .............................................................................24, 25, 27

**Other Authorities**

Local Civil Rule 56.1 ...............................................................................6, 10, 16

# I.    INTRODUCTION

In its moving papers, ABIM identified direct and incontrovertible evidence that Dr. Salas Rushford obtained, copied, and distributed more than seventy exam questions in which ABIM owns valid copyrights.[1]  Accordingly, ABIM demonstrated that it satisfied each of the elements of copyright infringement, and that the Court should grant its motion for summary judgment.  In his response and cross-motion, Dr. Salas Rushford fails to identify any genuine issue of material fact that could defeat ABIM's motion, much less to muster grounds for summary judgment in his favor on ABIM's claim.  (*See* Dr. Salas Rushford Mem. ("Opp'n Mem."), Doc. No. 212-1.) Instead, Dr. Salas Rushford relies on misplaced or readily refuted legal arguments, and on purported assertions of fact that are discredited by compelling record evidence.

<u>First</u>, ABIM established the first element of copyright infringement by proving ownership of the copyright registrations for the infringed exam questions.  Dr. Salas Rushford's incorrect legal argument to the contrary based on alleged technical deficiencies with ABIM's copyright registrations does not withstand legal or factual scrutiny.

<u>Second</u>, ABIM has established the second element of copyright infringement by proving copying of its copyrighted questions by Dr. Salas Rushford.  It has done so by adducing compelling evidence of direct copying, which alone satisfies the copying requirement.  In the alternative, ABIM established the copying requirement by adducing equally compelling indirect evidence—*i.e.*, that Dr. Salas Rushford had *access* to ABIM copyrighted questions and that the content of Dr. Salas Rushford's emails is *substantially similar* to ABIM's copyrighted questions. Dr. Salas Rushford's argument that the Court should disregard all of that evidence because the

---

[1]    Abbreviations used herein have the meanings used in the Memorandum in Support of ABIM's Motion for Summary Judgment ("Init. Mem."), Doc. No. 207-1.

infringing conduct occurred before he took the ABIM exam has no basis in the law, and it requires the Court to disregard the record evidence that he obtained ABIM's copyrighted questions from others before he took the exam. Equally untenable is Dr. Salas Rushford's argument that "private communications by a student with his instructor" cannot constitute copyright infringement. Nothing in copyright law shields Dr. Salas Rushford from liability on the basis that he himself did not use ABIM's questions to teach a prep course, or that he did not generate revenue directly from his infringing conduct.

Third, ABIM's expert, Dr. Ward—who was actually involved in the creation of the ABIM exam content at issue—prepared a systematic visual comparison of ABIM's exam questions with Dr. Salas Rushford's communications, and compellingly demonstrated substantial similarity. Moreover, Dr. Salas Rushford's contention that Dr. Ward's report is inadmissible because it was unsworn when it was prepared is of no moment; the declaration submitted herewith renders the report admissible. And in contrast to Dr. Ward's report, the report of Dr. Salas Rushford's purported expert—who has no qualifications to opine on Dr. Ward's conclusions—offers nothing of probative value on matters on which the Court could benefit from expert opinion.

Fourth, the *scènes à faire* and other originality and ideas doctrines do not bar the copyrightability of ABIM's exam questions. ABIM's exam questions contain creative and original fact patterns, prompts, and answer choice combinations that can be expressed in many different ways. The questions in no way exemplify material barred from copyright protection because the subject matter represented can only be expressed in a single way.

Fifth, the Copyright Act plainly entitles ABIM to statutory damages if it establishes its infringement claim, as the record demonstrates it has. Dr. Salas Rushford's argument that ABIM

must prove actual damages fundamentally misapprehends the law, and relies on inapposite cases.

Sixth, the record evidence refutes Dr. Salas Rushford's contention that ABIM "could easily" have identified Dr. Salas Rushford earlier and thus that the statute of limitations bars ABIM's claim. Indeed, the record establishes that Dr. Salas Rushford intentionally concealed his identity and that ABIM exercised reasonable diligence in investigating it. Consistent with the direction of the Third Circuit when it considered Dr. Salas Rushford's timeliness argument earlier in the case, this action was timely under the discovery rule and for the independent reason that Dr. Salas Rushford's conduct warrants equitable tolling.

For all these reasons, as set forth in more detail below, the Court should grant ABIM's motion for summary judgment and deny Dr. Salas Rushford's cross motion.

## II.     ARGUMENT

### A.     ABIM Proved Valid Ownership of Its Copyrights

There are two "essential elements" of copyright infringement: "ownership of copyright, and copying by the defendant." *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 561 (3d Cir. 2002); *see also* Init. Mem. at 14-15.

ABIM has met its burden to prove ownership. The copyright registrations for the exams at issue create a presumption of validity, *see* 17 U.S.C. § 410(c); *see also* Init. Mem. at 15. ABIM has provided those registrations (ABIM SMF ¶ 34), and compiled a summary chart of the pertinent information in the record identifying the registration that covers each of the questions that Dr. Ward demonstrated was infringed by Dr. Salas Rushford (*id.* ¶¶ 34-45 & Ex. 14 thereto; *see also* Init. Mem. at 16-17). The chart carefully identifies (i) the internal ABIM question number, (ii) the row in Dr. Ward's report analyzing the infringement of that question, (iii) the record citation for the full text of the ABIM question; (iv) the record citation for the ABIM exam or exams in which the question appeared, and (v) the copyright registration certificate or

certificates that cover the question.

Dr. Salas Rushford has "the burden of rebutting this presumption" of validity. *Nat'l Bd. of Med. Exam'rs v. Optima Univ. LLC*, No. 1:09-cv-01043-JDB-cgc, 2011 U.S. Dist. LEXIS 143645, at *17 (W.D. Tenn. Sep. 29, 2011) (submission of copyright registration certificates that contained one or more questions copied by defendants was sufficient to establish ownership at summary judgment stage); *see also Masquerade Novelty, Inc. v. Unique Indus.*, 912 F.2d 663, 668 (3d Cir. 1990) (presumption of validity from § 410(c) shifts the burden to the defendant to prove invalidity). He has failed to meet his burden.

Dr. Salas Rushford contends that ABIM's copyright registrations are invalid because they were registered as works made for hire rather than as works assigned by third parties who participated in the ABIM committees involved in developing exam questions. ABIM disputes his premise, *see* Init. Mem. at 5-6, but even assuming it is correct, the copyright registrations are nonetheless valid. Under the safe harbor provisions of Section 411 of the Copyright Act, to carry his burden to rebut validity, Dr. Salas Rushford would have to establish that (i) ABIM had subjective knowledge that it made a factual or legal inaccuracy in the registrations, and (ii) the inaccuracy would have led the Register of Copyrights to refuse the registrations. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 142 S. Ct. 941, 947 (2022) ("[I]n this context, the word 'knowledge' means actual, subjective awareness of both the facts and the law."). Dr. Salas Rushford cannot raise a genuine issue of material fact as to either prong.

First, he identifies no evidence that ABIM knew that the exams were not works for hire. In fact, the record evidence proves the opposite (ABIM SMF ¶ 21), and Dr. Salas Rushford concedes as much (Def's CSMF, Doc. No. 212-2, ¶ 21): ABIM entered into agreements with its item writers to vest ownership of the exam questions in ABIM. Those agreements state:

Member further agrees that, prior to the Member's service on the Test Committee and prior to the Member's creation of any Works for ABIM, the parties agreed that all such Works would be Works Made for Hire, as that term is defined by the . . . Copyright Act, with all rights of ownership fully vested in ABIM from the first moment of creation of any portion of such Works, and that the original agreement concerning Member's service on the Test Committee was intended to memorialize that the Works would be Works Made for Hire. . . .  Member acknowledges that ABIM has the sole right to apply for, obtain, and own copyright registrations and use the copyright notices to the Works.

Ex. A at ABIM00002-3.  It is likewise insufficient for Dr. Salas Rushford to argue that the agreements post-dated the creation of the exams at issue because the agreements confirm prior agreements with item-writers as to ABIM's ownership rights.  *See Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 558-59 (2d Cir. 1995) (such writings are valid to "confirm[] a prior agreement, either explicit or implicit, made before the creation of the work").  And even if the agreements did not render the exam questions works for hire, there is no doubt as to ownership because the item writers assigned ownership to ABIM:

To the extent that any such Works are deemed not to be Works Made for Hire, Member irrevocably and without limit assigns all current and future right, title, and interest, including without limitation all copyrights, in the works to ABIM (or its designee) as set forth above, together with all renewals and extensions of such rights that may be obtained under the laws now or hereafter in force and effect in the United States of America and any other country or countries.

Ex. A, at ABIM00002.  Thus, Dr. Salas Rushford cannot raise an issue of fact to satisfy the subjective knowledge prong to overcome the validity of ABIM's registrations.  *See Kev & Cooper L.L.C. v. Gladwell Educ. Ltd. Liab. Co.*, No. 22-2029, 2023 U.S. Dist. LEXIS 31842, at *5-6 (D.N.J. Feb. 27, 2023) ("To the extent Plaintiff's certificate of registration contains inaccurate information by stating that the Work was made for hire, there is no evidence that Plaintiff knew this was inaccurate, as both Plaintiff and Copur have repeatedly affirmed their belief in the validity of the certificate of registration and the facts stated therein.").

Second, Dr. Salas Rushford cannot establish that any inaccuracy would have caused the

Register of Copyrights to refuse the registrations. *Adriana's Ins. Servs. Inc. v. Auto Int'l Ins. Agency, Inc.*, No. 8:22-cv-00174, 2023 U.S. Dist. LEXIS 208056 (C.D. Cal. Aug. 18, 2023), is directly on point. In that case, defendant sought to defeat summary judgment by asserting that the work at issue, registered by plaintiff as a work for hire, had actually been assigned to plaintiff, and therefore invalidly registered. The court rejected that argument, holding that because plaintiff was the owner by assignment, the copyright registration was valid: "Because the alleged inaccuracies in Plaintiff['s] copyright application were curable on that basis, Defendant[] cannot show that the Register of Copyrights would have refused registration." *Id.* at *15-16 (granting summary judgment for plaintiff). Dr. Salas Rushford's argument that the Register of Copyrights would have refused ABIM's registrations fails as a matter of law.

Accordingly, there is no genuine issue of material fact as to ABIM's ownership of the pertinent copyright registrations.[2] *See Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 398 (D.N.J. 2012) ("[T]o withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.").

---

[2]    Tellingly, Dr. Salas Rushford does not dispute the relevant paragraphs of ABIM's SMF (*see* ABIM SMF ¶¶ 17-46; Def's CSMF ¶¶ 17-46), other than to assert spurious arguments that ABIM's exams were not in fact secure, that ABIM "acquiesced" in Dr. Arora's illicit test prep practices, and that by filing redacted copies of its copyright specimens, ABIM did not provide copies that "identify the entire content of the works" (*see* Def's CSMF ¶¶ 35, 38, 43, 46). Those legal arguments have no merit (*see, e.g.*, Init. Mem. at 3-11), and should be disregarded because they are not properly asserted in a statement of material facts, *see A.S. v. Ocean Cty. Fire Acad.*, No. 19-11306, 2020 U.S. Dist. LEXIS 55075, at *4 (D.N.J. Mar. 30, 2020) (denying defendants' motion for summary judgment and finding defendants' statement of material facts not in compliance with Local Civil Rule 56.1 "because it rests upon legal argument and conclusions of law"); *Beatty v. Twp. of Elk*, No. 08-2235, 2010 U.S. Dist. LEXIS 36673, at *10 n.2 (D.N.J. Apr. 14, 2010) (finding procedural deficiency with statement of material facts because certain paragraphs were "really just legal argument" and "[t]he Rule 56.1 statement of facts is not the place for argument").

**B.      ABIM Proved Copying by Defendant**

There is likewise no genuine issue of material fact as to the copying element of ABIM's copyright infringement claim.  The ample and overwhelming record evidence demonstrates that Dr. Salas Rushford copied ABIM's copyrighted questions either on the basis of direct evidence, or inferentially based on evidence of access and substantial similarity, and he does not raise an issue of material fact on either point.  *See* Init. Mem. at 17-26.

**1.      Dr. Salas Rushford Cannot Refute ABIM's Direct Evidence**

The direct evidence of Dr. Salas Rushford's copying consists of documentary and testimonial evidence of his phone calls with Dr. Luna in the week before he took his exam; the emails reflecting that Dr. Salas Rushford then shared his notes of those calls—after Dr. Luna reviewed them to confirm they reflected her recollections from her exam—with Dr. Arora; and a host of additional emails between Dr. Salas Rushford and Dr. Arora that unequivocally reveal that Dr. Salas Rushford was aware that they contained ABIM exam content.[3]  *See* Init. Mem. at 17-20; ABIM SMF ¶¶ 64-65, 67-69, 98, 110-11, 118, 141-43.

Faced with this mountain of evidence, Dr. Salas Rushford asserts a series of alternative factual explanations, each less credible than the next.  First, he contends that ABIM cannot establish a claim for copyright infringement because the infringing activity took place before he took his ABIM exam, and therefore, ABIM cannot prove that he "copied any material from his exam."  Opp'n Mem. at 14.  But ABIM has never alleged that Dr. Salas Rushford copied

---

[3]      Dr. Salas Rushford argues that ABIM's direct evidence argument "implicitly asks that the Court draw inferences in its favor."  Opp'n Mem. at 15.  But this is evidence of direct copying.  The legal standard is whether there is a sufficient evidentiary basis for a ***reasonable*** jury to find in Dr. Salas Rushford's favor.  *See Tetris*, 863 F. Supp. 2d at 398.  There is not.  It is Dr. Salas Rushford who asks the Court to abandon common sense and apply the standard of a credulous jury in evaluating that evidence.

questions from his specific ABIM exam.  ABIM has alleged, and the evidence proves, that he

received copyrighted ABIM content from three years' worth of exams from others, including

colleagues who sat for the exam days before he did.  First and foremost, he helped himself

through his infringing conduct.  Copying from a work derived from ABIM's original work, as

Dr. Salas Rushford did, is no less a violation of copyright law than copying from ABIM's

original work would have been.  "Logically . . . , if a third party copies a derivative work without

authorization, it infringes the original copyright owner's copyright in the underlying work to the

extent the unauthorized copy of the derivative work also copies the underlying work." *DC

Comics v. Towle*, 802 F.3d 1012, 1023-25 (9th Cir. 2015) (affirming summary judgment for

plaintiff when defendant's unauthorized replica was "an indirect copy" of the plaintiff's

character based on defendant's copying of derivative works).

Next, Dr. Salas Rushford—who concedes that he used the padrinojr@yahoo.com email

address to send and receive the emails at issue (ABIM SMF ¶¶ 68, 69, 110 (citing Salas

Rushford Dep. Tr. 142:13-18)—posits that the emails contained Arora Board Review "class

notes."  But the documents plainly reveal otherwise.  For example, one of his emails contained

an attachment called "Board Questions 2007," with the subject line "DON'T DON'T DON'T

DON'T FORWARD," and included the following passage:

> At this moment I was burned out however I think he is having anxiety performance, just
> because he is not depressed nor is having problems with erectile dysfunction, my answer
> was (A), but I am not sure.  Well buddy there you have it almost one block of question,
> review it and Good Luck.

(ABIM SMF ¶¶ 111, 113.)  Nothing in the record supports Dr. Salas Rushford's rank

speculation, Opp'n Mem. at 15, that the original emailer simply wanted to hoard the notes

"perhaps because she was in a different study group."  Another email Dr. Salas Rushford sent to

Dr. Arora had the subject line "164 question the one repeated in every exam [*sic*]."  (*Id.* ¶ 116.

*See also* Init. Mem. at 8-11 (describing additional emails).) No reasonable fact finder could read these documents and conclude that Dr. Salas Rushford was sending Dr. Arora class notes from Dr. Arora's own class.[4] Nor would it make any sense for Dr. Salas Rushford to do so.

Finally, Dr. Salas Rushford tries to discredit Dr. Luna's 2016 testimony by noting that she recalled the wrong gender of his sibling, and by questioning how she could have remembered detailed information from her 2009 exam. Opp'n Mem. at 16. Putting aside the irrelevance of Dr. Salas Rushford's sibling, Dr. Luna was not testifying solely from her recollection about the questions on her exam. She was testifying whether notes Dr. Salas Rushford had taken from their phone conversations, marked as exhibits at her deposition, reflected what she remembered immediately after taking her ABIM exam and conveyed to Dr. Salas Rushford the same day. ABIM SMF ¶¶ 67-69. She clearly remembered those conversations, confirmed that his notes contained her recollections from her exam, and explained why at her deposition:

> Q:   How did you remember this in such detail?
>
> A:   Our level of anxiety was so much at that time, and these were, to me, traumatizing questions. Like I just wanted to know the answers. I don't think anybody can forget like at the time.

(ABIM Ex. 12 to SMF, Luna Dep. Tr. 15:14-18.) Further lending credibility to her testimony, Dr. Luna did not shy away from acknowledging that she could not recall certain details. (*See, e.g.*, *id.* at 29:16-22 ("I don't remember the particular details of this question."); 32:14-24 (stating "I don't remember exactly what were the answers at the time," but remembering they focused on a particular word).)

In the face of this compelling testimonial and documentary evidence, Dr. Salas

---

[4]   The sheer number of ABIM exam questions that Dr. Salas Rushford sent to Dr. Arora containing <u>only</u> wrong answer choices compels this conclusion. ABIM SMF ¶ 133.

Rushford's mere denials of Dr. Luna's extensive testimony about their calls and his notes, and his fantastical explanations for the contents of third parties' emails, do not create a genuine issue of material fact. *See Bentzley v. Medtronic, Inc.*, 827 F. Supp. 2d 443, 456 (E.D. Pa. 2011) (reasoning, in granting summary judgment for defendants, that "[n]aked denials of Defendants' proofs do not raise a genuine issue of material fact under Rule 56"); *Am. Registry of Radiologic Technologists v. Bennett*, No. SA-12-CV-109, 2013 U.S. Dist. LEXIS 120548, at *23-24 (W.D. Tex. Aug. 26, 2013) (rejecting defendant's "self-serving" statements because defendant lacked credibility and her "testimony was directly contradicted by incontrovertible evidence").

## 2.    Dr. Salas Rushford Cannot Refute ABIM's Indirect Evidence

ABIM independently establishes the copying element of its claim with indirect evidence of copying, namely that Dr. Salas Rushford had access to ABIM exam content and distributed substantially similar material. Again, nothing in Dr. Salas Rushford's opposition and cross-motion raises a material issue of fact on this element.

### a.    Dr. Salas Rushford Had Access to ABIM Exam Questions

As discussed above, Dr. Salas Rushford had access to ABIM exam content through physicians who had previously taken ABIM exams, including Dr. Luna and those who compiled the documents Dr. Salas Rushford obtained and subsequently sent to Dr. Arora. This is sufficient to establish access. *See* Init. Mem. at 20-22. It is axiomatic that "evidence that a third party, with whom both plaintiff and defendant were dealing, had possession of plaintiff's work may suffice to establish defendant's access." 4 Nimmer on Copyright § 13D.05 (collecting cases). *See also Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 n.6 (5th Cir. 1994) (access is established when copying was done through third party sources); *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1074 (2d Cir. 1992) ("access through a third party is legally sufficient"); *Bennett*, 2013 U.S. Dist. LEXIS 120548, at *29-31 (access established through

evidence that defendant had solicited memories from students who had recently taken copyrighted exams); *Educ. Testing Serv. v. Simon*, 95 F. Supp. 2d 1081, 1088 (C.D. Cal. 1999) ("Defendants obtained access to ETS's copyrighted MSAT forms and questions through students who had recently taken the test and voluntarily provided this information.").

Dr. Salas Rushford dismisses all of this authority as "extra-jurisdictional decisions that are not controlling in this district," and suggests that *Jarvis v. A&M Records*, 827 F. Supp. 282, 288 n.2 (D.N.J. 1993), provides a different standard in this district, *see* Opp'n Mem. at 16. It does not. *Jarvis* did not even analyze access because it was a direct copying case. *Id*. at 289 ("The instant case is one of those rare cases in which such indirect proof is not necessary. In this case, the defendants actually took a sample of plaintiff's recording and incorporated into their recordings. Indeed, they admit as much and admit that it was without authorization."). *Jarvis* has no bearing on ABIM's proof of access.

Under Dr. Salas Rushford's access theory, an artist could receive a photograph of a copyrighted painting, create an unauthorized duplicate from that photograph, and then go to the museum to see the copyrighted painting for himself—and evade liability on the basis that he did not see the original until after he infringed the copyright. That is not the law. "[I]t is no defense even if defendant did copy from a third work rather than from plaintiff if such third work was itself an unauthorized copy of plaintiff's work." *See* 2 Nimmer on Copyright § 8.01 (citing cases). Accordingly, there is no genuine issue of material fact that Dr. Salas Rushford had access to ABIM's copyrighted exam questions.

> **b.** **The Content of Dr. Salas Rushford's Emails Is Substantially Similar to ABIM's Exam Questions**

Nor is there a genuine issue of material fact as to the substantial similarity of Dr. Salas Rushford's emails and ABIM's copyrighted exam questions. In its Initial Memorandum, ABIM

established substantial similarity using both the "extrinsic test" (through a visual comparison and expert testimony) and the "intrinsic test" (by showing that Dr. Salas Rushford's copying was an unlawful appropriation of the copyrighted questions based on an analysis of the factors prescribed by the Third Circuit). Init. Mem. at 22-27. Dr. Salas Rushford does not directly address ABIM's extensive analyses of either of those tests. Instead, his Opposition ignores the record and again disregards fundamental principles of copyright law.

Dr. Salas Rushford inexplicably repeatedly contends that ABIM has not provided a visual, side-by-side comparison of the contents of Dr. Salas Rushford's emails and ABIM's actual exam questions. *See* Opp'n Mem. at 16, 19, 20, 21, 22. Yet ABIM and its expert, Dr. Ward, have done exactly that. *See* Init. Mem. at 22-26; ABIM SMF ¶¶ 125-135 (describing that comparison in great detail across more than four pages of ABIM's Initial Memorandum).

Equally inexplicably, Dr. Salas Rushford contends that he cannot be liable for copyright infringement based on his "private" communications with Dr. Arora because he was merely a student in Dr. Arora's prep course, and not himself a prep course that benefitted financially from its infringement. *See* Opp'n Mem. at 16-22. Dr. Salas Rushford has no authority for such a radical curtailing of potential liability under the Copyright Act. Rather, he urges the Court to make that new law merely on the basis that some of the test-copying cases were brought by testing organizations against test prep courses and not individual test takers. *See id.* at 18. None of those cases turns on the fact that the defendant was a prep course, or on the identity of the defendant at all. Any attempt to distinguish them on that basis is meaningless. The cases are about whether the defendants' ***conduct*** constituted copyright infringement, not who the defendants were. *See* Init. Mem. at 20-27. In *Bennett*, for example, plaintiff demonstrated defendant had access to plaintiff's copyrighted exams with evidence that defendant had solicited

and received recollections from students who had recently taken the exams, 2013 U.S. Dist. LEXIS 120548, at *29-31—exactly as the evidence shows Dr. Salas Rushford did here. Moreover, there is no requirement that the plaintiff demonstrate that the infringer earned income directly from the infringement. To be sure, Dr. Salas Rushford benefitted from his conduct by gaining an unfair advantage on a secure exam. *See* Init. Mem. at 26 (discussing how Dr. Salas Rushford's knowingly wrongful conduct is proof of unlawful appropriation). But again, Dr. Salas Rushford does not and cannot cite any authority supporting his effort to rewrite the law.

Neither of the two cases he relies upon supports his theory that private communications are shielded from liability. *Pearson Educ., Inc. v. Chegg, Inc.*, No. 21-16866, 2023 U.S. Dist. LEXIS 85210 (D.N.J. May 16, 2023), resolved a discovery dispute between a textbook company and a former licensee when the plaintiff alleged that the defendant had continued to reproduce the plaintiff's study guide questions after the license expired and there were press reports that third parties were using the materials for cheating. The court denied the plaintiff's requested discovery as to third party use of the defendant's infringing materials because such information was not relevant to the elements of copyright infringement or the defenses thereto. *Id*. at *6. That decision as to the scope of permissible discovery has no bearing on whether ABIM has proved the elements of copyright infringement. Nor does *Pearson*, as Dr. Salas Rushford suggests, Opp'n at 20, somehow limit the applicability of the Third Circuit's decision in *Education Testing Services v. Katzman*, 793 F.2d 533 (3d Cir. 1986) (holding that the copying of even of a few of plaintiff's secure test questions justified a preliminary injunction against the copying of plaintiff's tests). *See* Init. Mem. at 15, 23, 24, 26. The *Pearson* court's discussion of *Katzman* merely related to an argument the defendant made about the proper scope of discovery given the procedural posture of the case. *Id.* at 10. The court did not, as Dr. Salas Rushford

misleadingly states, "decline[] to apply" *Katzman*, Opp'n at 20, much less address any of

*Katzman's* legal holdings in adjudicating purely a discovery dispute.

*Assessment Technologies Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1210 (D. Kan.

2022) (cited in Opp'n at 17), is also irrelevant, and actually undermines Dr. Salas Rushford's

arguments.  In that case, plaintiff claimed that defendant had created her own nursing study

guides using plaintiff's practice study guides.  The court denied plaintiff's motion for summary

judgment not because an individual student could not be liable for copyright infringement, but

because "in opposition to summary judgment, Defendant submit[ted] detailed information about

all of these examples, explaining why she chose the examples she did and identifying other

sources that include the same examples." *Id.*  In other words, defendant adduced evidence from

which a reasonable jury could find that the allegedly infringing work was not sufficiently similar

to plaintiff's copyrighted work. *Id.*  This is precisely what Dr. Salas Rushford has failed to do

here.  ABIM has demonstrated that the content of his emails is substantially similar to ABIM

exam content and he has adduced no evidence comparable to that in *Assessment Technologies*

showing independent creation or lack of originality.  Neither Dr. Salas Rushford nor his

purported expert, discussed further below, identifies any evidence of a source of Dr. Salas

Rushford's infringing materials other than ABIM exam content.

There is also no basis for Dr. Salas Rushford's assertions, Opp'n Mem. at 18, that ABIM

lacks standing to object to his conduct "unless it was damaged" by his conduct, and that ABIM

"was not injured in any way by [him]."  ABIM indisputably suffered harm as a result of Dr.

Salas Rushford's infringing conduct, which undermined the integrity of board certification and

destroyed the value of the infringed questions.  (ABIM SMF ¶¶ 10, 13, 17-31.)  As set forth in

ABIM's discussion of unlawful appropriation in its Initial Memorandum, Dr. Salas Rushford

took the copyrighted exam content that was of greatest substance and value to ABIM—the "creative expressions [that are] embodied in the answer choices, rather than the fact patterns alone." Init. Mem. at 27 (citing *Nat'l Conf. of Bar Examiners v. Multistate Legal Studies, Inc.*, 458 F. Supp. 2d 252, 258-59 (E.D. Pa. 2006)). And contrary to Dr. Salas Rushford's suggestions, *see, e.g.*, Opp'n at 19-20, it does not matter that Dr. Salas Rushford unlawfully appropriated portions of ABIM exams and not the entire exams. "Less-than-wholesale reproduction" is actionable infringement. *Multistate Legal Studies*, 458 F. Supp. 2d at 258; *see also Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) (examining the "qualitative value of the copied material, both to the originator and to the plagiarist" when infringement was based on copying 300 to 400 words of an entire book); Init. Mem. at 27.

Dr. Salas Rushford fails to raise a genuine issue of material fact as to any of the proofs required to establish copying through inferential evidence of access and substantial similarity. The record warrants summary judgment for ABIM on the basis of either direct or indirect evidence that Dr. Salas Rushford copied ABIM's copyrighted exam questions.

### C.    Dr. Ward's Expert Report Is Admissible, Conclusive Evidence

Dr. Ward systematically compared Dr. Salas Rushford's communications side-by-side with ABIM's actual questions and concluded that Dr. Salas Rushford copied ABIM's questions and that there was no chance that his communications were innocuous class notes. Init. Mem. at 22-26; ABIM SMF ¶¶ 125-135. Dr. Salas Rushford argues that the Court should reject Dr. Ward's report because it was unsworn and because "its content is not apply [*sic*] any expertise to its analysis." Opp'n at 22. He further asserts, in one conclusory sentence, that he "provided an expert report by Dr. Westby Fisher, which fully rebuts ABIM's expert." Opp'n at 24.

As to admissibility, ABIM is filing herewith a declaration from Dr. Ward affirming the contents of his report. (Decl. of L. Ward, Ex. B.) That resolves the question of admissibility; the

Court may consider the declaration for purposes of ABIM's motion. *See Melendez v. Target Corp.*, No. 2:18-CV-09405, 2022 U.S. Dist. LEXIS 91902, at *11 (D.N.J. May 23, 2022) ("Even if a party initially submits an unsworn affidavit or declaration to substantiate a claim under Rule 56, if a party attaches an unsworn expert report along with an expert's sworn declaration or deposition affirming the report, the unsworn report's deficiencies may be cured.") (citing Wright & Miller, 10B Fed. Prac. & Proc. Civ., § 2738 (4th ed. July, 2020) ("Subsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment.")).

As to Dr. Ward's expertise and the value of Dr. Fisher's report, Dr. Salas Rushford has it backwards. The entire basis of Dr. Salas Rushford's argument that Dr. Ward's report does not apply expertise is a series of anecdotal, semantic criticisms of Dr. Ward's question matches. Dr. Salas Rushford does not say a word about Dr. Ward's expertise in internal medicine or his work developing ABIM's exam questions, including the very questions at issue here. *See* Opp'n at 22-23; Init. Mem. at 9 (explaining that Dr. Ward is a practicing internist who served as Physician Secretary for ABIM's Internal Medicine Exam Committee—the entity responsible for preparing the exam—at the time Dr. Salas Rushford took the exam). For example, Dr. Salas Rushford suggests the Court should disregard Dr. Ward's conclusion that Dr. Salas Rushford's notes from his call with Dr. Luna referring to an exam question about a "lady from Mississippi" copied the corresponding ABIM question because the actual question described a female patient "who lived in Mississippi all of her life." Opp'n at 22; Init. Mem. at 24. These arguments miss the point. The proof of infringement does not turn on whether "lady from Mississippi" or other phrases in Dr. Salas Rushford's notes and emails exactly match the phrasing of ABIM's exam questions. The dispositive fact is that the comparison of Dr. Salas Rushford's materials to the ABIM

questions reveals such striking similarities. These similarities include multiple non-substantive, creative elements from ABIM's questions—such as details about patients and wrong answer choices—compelling the conclusion that the infringing materials could only have been copied. *See, e.g.*, *Katzman*, 793 F.2d at 541 (finding some of defendant's materials "so strikingly similar" to plaintiffs' work "as to lead to no other conclusion than that they were copied"); *see also* Init. Mem. at 23 (citing other cases). Dr. Ward explained that each of the excerpts he concluded were copied contained telltale signs of copying: they described images from the exam, copied specific and sometimes extraneous details, and reproduced wrong answer choices from the ABIM exam questions. (ABIM SMF ¶¶ 133-35.)

Dr. Ward offered an opinion precisely on what he is qualified to opine: whether, as a factual matter, Dr. Salas Rushford's notes were sufficiently similar to ABIM test questions so as to indicate that they were copied or derived from the ABIM questions. That opinion is based on his experience in drafting and selecting questions for inclusion on the ABIM exam. His analysis was open-ended, and took into account such details as whether Dr. Salas Rushford's materials expressed the same "testing points"—specific pieces of medical knowledge that questions are designed to test—by using specific details from the ABIM question or duplicating specific wrong answer choices. (ABIM SMF ¶ 126) Given that ABIM's exam questions consist of medical factual scenarios, conditions, and potential diagnoses, Dr. Ward's report properly aids the factfinder in determining whether Dr. Salas Rushford copied ABIM content. *See Whelan Assocs. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1232 (3d Cir. 1986) ("First, the fact-finder must decide whether there is sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own. On this issue, expert testimony may be received to aid the trier of fact."), *cert. denied*, 479 U.S. 1031 (1987).

In contrast, Dr. Fisher does have any relevant expertise, and his report offers no assistance to a lay factfinder.  Dr. Fisher is a cardiologist who is a blogger and longtime critic of ABIM; indeed, Dr. Salas Rushford also proffered a report from Dr. Fisher in support of his now dismissed counterclaims (which had nothing to do with copyright infringement) in which Dr. Fisher claimed to be an expert "on the topic of board certification in internal medicine."  (Doc. No. 212-6, at 2.)  In his report purporting to rebut Dr. Ward's report, although he is not a lawyer or versed in the expertise of generating professional exam questions designed to gauge a physician's medical knowledge, Dr. Fisher opines on whether ABIM's exam questions are "original to ABIM" and thus protectable under copyright law.  Even putting aside Dr. Fisher's lack of qualifications, the protectability of test questions is an issue of law on which expert testimony is inappropriate, and of no help to the factfinder.

Without offering any factual support, Dr. Fisher opines that Dr. Ward's conclusion as to copying is "impossible to prove based on the materials consulted" and "demonstrably false." (Doc. No. 212-7, Fisher Resp. Rept. ¶ 5.)  He further criticizes Dr. Ward's alleged failure to "identify any source accessible to Dr. Salas Rushford from where he allegedly based all the excerpts listed in its Appendix B."  (*Id.* ¶ 7; *see also id*. ¶ 9 (claiming that it is a mystery where Dr. Salas Rushford sourced this content because he "had not taken the test at the time he sent the emails").  But Dr. Salas Rushford need not have taken his own exam before infringing ABIM's questions, and there is no mystery as to the source of the questions.  The record makes that clear.

Dr. Fisher also opines that some of ABIM's questions reflect "classic" disease presentations, and thus cannot be "original" to ABIM.  (*Id.* ¶¶ 13-15.)  Similarly, he concludes that certain wrong answer choices in ABIM's questions would be "common" in a differential diagnosis, and thus "cannot be said to be original to ABIM."  (*Id.* ¶ 13).  But Dr. Fisher is neither

qualified nor permitted to opine on what is original enough to be protected under copyright law. And to be sure, as addressed in the next section, he is wrong.

Dr. Fisher's criticisms of Dr. Ward's conclusions of copying do not withstand scrutiny. For example, with respect to the comparison in Row 29 of Dr. Ward's report, Dr. Fisher opines that the evidence suggests the ABIM "question was not copied." (*Id.* ¶ 17.) For that item, Dr. Salas Rushford's notes state:

> Old lady starts with bizar [*sic*] behavior
> meds [underlined twice] she was on B-blocker (alenolal)
> trazodone She makes lists of what her family members do wrong?
> Why is this patient having acute bizzar [sic] behavior?

(Ward Report, Appendix B, Row 17.) The text of the corresponding ABIM question, however, leaves no doubt for a reasonable factfinder that Dr. Salas Rushford's notes copy the question:

> **A 72-year-old woman** is brought to your office by family members for evaluation of **increasingly bizarre behavior** during the past two to three weeks. **She has been accusing family members of hostile acts and writing long letters detailing their alleged activities.** She has become withdrawn and no longer participates in social events at her condominium. **Medical history is significant** for severe osteoarthritis, hypertension, insomnia, and alcohol dependence, for which she has undergone inpatient treatment. Her long-standing medications are **metoprolol**[5], diphenhydramine, chlorthalidone, naproxen, and **trazodone**.

(ABIM Ex. 20, at ABIM00103) (emphasis added). Such conclusory opinions by Dr. Fisher do not create a genuine issue of material fact.

Nor does Dr. Fisher create an issue of fact by contending that Dr. Ward's use of the phrase "question details" was too "unspecified" to determine copying. If one looks at the excerpts from Dr. Salas Rushford's notes and the corresponding ABIM question, it is obvious which question details were copied, and Dr. Ward's label is not "too vague to be evaluated" (Doc. No. 212-7, Fisher Resp. Rept. ¶ 18). The above example from Row 29 demonstrates this.

---

[5] Metroprolol is a beta-blocker, hence Dr. Salas Rushford's use of "B-blocker" in his notes.

To take another example, Dr. Ward noted in Row 34 of his chart that one of the bases for his opinion that Dr. Salas Rushford copied ABIM Question 44167 is that his notes repeated "specific question details." The notes stated as follows:

> lady from Mississippi has ® pleural pain
> she came from vacation of 2-3 weeks
> from Texas and Arizona complains of generalized malaise CXR shows consolidation in ® lung base
> eosinophilia with leukocytosis
> What is the Dx:
> ABPA vs. histoplasmosis vs. coccidioidomycosis

(Ward Report, Appendix B). The corresponding ABIM question stated as follows:

> A 19-year-old woman has had fever, cough, and **right-sided pleuritic pain** for one week. **She reports malaise** and reduced exercise tolerance but has not had hemoptysis or wheezing. Medical history is noncontributory. She takes no medications and does not smoke cigarettes. **She has lived in Mississippi all her life**. **Two weeks ago, she returned from a vacation** in California **and Arizona**. Temperature is 3.84 C (101.1 F), pulse rate is 92 per minute and regular, respirations are 18 per minute, and blood pressure is 120/60mm Hg. Cardiac examination is normal. Crackles are heard at the **right lung base**. Hematocrit and hemoglobin are normal; **leukocyte count is 10,100/cu mm** with 75% neutrophilis, 15% lymphocytes, and **10% eosinophils**. Chest radiograph shows **consolidation in the right lower lobe** and enlargement of the right hilar lymph nodes.
>
>  Which of the following is the most likely diagnosis?
> A. **Allergic bronchopulmonary aspergillosis**;
> B. Asthma;
> C. **Histoplasma pneumonia**;
> D. **Pulmonary coccidioidomycosis**.

ABIM Ex. 20, at ABIM00108 (emphasis added). This further underscores that Dr. Fisher has no basis for his rebuttal of Dr. Ward's conclusions.

Finally, Dr. Fisher baldly concludes that it is "most likely" that Dr. Salas Rushford's emails contained "class notes from a board review course, or notes from published board preparation materials, or review notes or examples created by physicians studying for the internal medicine examination." (Doc. 212-7, Fisher Response Rept. ¶ 21.) He does not identify any basis for that conclusion, which is undermined by all the record evidence discussed above.

Dr. Ward's expert report is admissible and appropriately provides expert opinion

compelling the conclusion that Dr. Salas Rushford copied ABIM exam questions.  Dr. Fisher's

report is not credible and creates no genuine issue of material fact to the contrary.

### D.    ABIM Exam Questions Are Protected Expressions and Not Subject to the *Scènes à Faire* Doctrine

Dr. Salas Rushford contends that "[c]lassic scenarios and differential diagnoses are not

copyrightable in medical examinations because they are *scènes à faire*, traditional and

commonplace or considered ideas, and in any event, are unoriginal."  Opp'n at 24.  Thus, he

argues that Dr. Fisher's testimony is needed "regarding whether the questions at issue 'reflect

current medical knowledge' . . . in a way original enough to be distinguishable from stock,

commonplace, traditional, standard or indispensable treatments of a topic of internal medicine,

none of which enjoys copyright protection."  *Id.*  This argument misapprehends the *scènes à

faire* doctrine, and disregards the overwhelming authority holding that exam questions are

copyrightable.  Moreover, ABIM's copyright registrations create a rebuttable presumption that

the questions contain protected expression.  Dr. Salas Rushford, "the party opposing the

copyright[,] must meet a very high burden of proof to overcome that presumption."  *Adriana's

Ins. Servs.*, 2023 U.S. Dist. LEXIS 208056, at *14 (citation omitted).  He has not met it.

*Scènes à faire* are materials for which the narrow doctrine of merger denies copyright

protection because "the subject matter represented can be expressed in no other way than through

the particular" expression used.  *Whelan*, 797 F.2d at 1236; *see also Kay Berry, Inc v. Taylor

Gifts, Inc.*, 421 F.3d 199, 209 (3d Cir. 2005) ("In some instances, there may come a point when

an author's expression becomes indistinguishable from the idea he seeks to convey, such that the

two merge."); *Katzman*, 793 at 539 (stating that "an expression will be found to be merged into

the idea when 'there are no or few other ways of expressing a particular idea'").  Dr. Salas

Rushford contends that this is the rare case involving "particularly complicated" subject matter in which expert testimony is needed to evaluate "whether any actual copying reached protectable aspects of the copyrighted work." Opp'n at 25 (citing *Kumar v. Inst. of Elec. & Elecs. Engineers, Inc.*, No. 12-6870, 2013 WL 5467090 (D.N.J. Sept. 30, 2013) (Hayden, J.)). Thus, he argues that Dr. Fisher should be allowed to testify that ABIM's test questions present "classic" internal medicine scenarios to assist in determining whether the "idea" behind the question and the expression of the question have merged, such that the expression is not original.[6] That is wrong. ABIM's test questions are not the type of material that warrants the rare exception.

Dr. Salas Rushford relies on *Whelan*, but that case demonstrates the extreme narrowness of the rule that experts may be used in certain cases to determine whether an idea can be expressed in more than one way. *Whelan* involved the prototypical example: a software program, consisting of source code written to carry out a particular idea. In those circumstances, the factfinder may require help in understanding whether the idea underlying the program—in *Whelan*, the efficient organization of a dental laboratory—can be expressed by computer code in more than one way. In such limited instances, the Third Circuit authorizes a district court to dispense with the actual/actionable copying distinction and allow expert testimony on substantial

---

[6]    Dr. Fisher lists a handful of questions that supposedly reflect such merger (Fisher Rept. at 5-6), but he offers no explanation why the allegedly "classic" scenarios are incapable of being expressed in multiple ways. Moreover, the assertion that answer choices crafted by ABIM cannot be protected by copyright to the extent they reflect logical choices that could arise in a differential diagnosis, is contradicted by the Third Circuit. *Katzman* found infringement of a simple question asking the definition of "Reprobate" based on the defendant's copying of the question and the answer choices listed in the plaintiff's question. 793 F.3d at 541. "Classic internal medicine questions" are protectable by copyright law, as the Copyright Office and numerous courts have recognized, because the fact patterns, prompts, and answer choice combinations are expressive and original even if they are designed to test universal concepts. *See id.* at 542 (there is protectable expression in a multiple choice question designed to test knowledge of basic concepts).

similarity as a whole. *See Whelan*, 797 F.2d at 1233. Tellingly, Dr. Salas Rushford has cited no

case outside the software context in which that approach was used.[7]

Dr. Salas Rushford's failure to cite a single case supporting his *scènes à faire* argument is

no surprise. "[M]erger is rare," and "generally found in works with a utilitarian function," not

literary works like ABIM's test questions. *Kay Berry*, 421 F.3d at 209. Thus, in *Katzman*,

which concerned infringement of test questions, the Third Circuit rejected the infringer's claim

that the test questions were unprotectable ideas, finding without the aid of expert testimony that

"[i]t [was] apparent on the face of the materials that [plaintiff's] questions [did] not represent the

only means of expressing the ideas thereon." 793 F.3d at 540. That is because the ideas behind

the questions ("square roots," "dangling participles," etc.) can be tested in various different

ways. *Multistate Legal Studies* is also instructive:

> MBE questions may reflect original expression in their wording, particularized facts, and
> answer choices. Defendants argue that they should be afforded only limited protection
> because they test established legal rules within a relatively narrow set of formal
> constraints. This is a fundamental misreading *of Educational Testing Services v.
> Katzman*, 793 F.2d 533, 542 (3d Cir. 1986), which recognized that there is protectable
> expression even in a multiple choice question designed to test knowledge of basic
> mathematical concepts, such as square roots and fractions . . . Teaching the legal
> principles tested on the MBE is permissible. Doing so using the same fact patterns,
> prompts, and answer-choice combinations found in MBE questions is not.

458 F. Supp. at 259. *See also Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp.*, 05 Civ. 8665,

2008 U.S. Dist. LEXIS 76899 (S.D.N.Y. Sept. 30, 2008) (declining to apply merger doctrine to

copyrighted materials designed to prepare examinees for national licensing exam for nurses).

---

[7]     *Kumar,* which ruled on a motion to dismiss, and thus did not adjudicate the admissibility
of expert testimony, does not support Dr. Salas Rushford's position. In any event, the
court merely remarked in *dicta* that the material at issue—a doctoral thesis in computer
science involving a new system for manipulating a robot used to perform eye surgery—
**might** fall within the *Whelan* exception. The docket does not reveal whether either party
ultimately sought to introduce expert evidence on the subject of copying.

Likewise in this case, expert testimony is not necessary to determine that the general idea of testing a doctor's ability to make a diagnosis—whether the indication can be described as "classic" or not—can be expressed in many different ways. Third Circuit law requires the factfinder to determine from the perspective of a lay observer whether any copying reached protectable elements of ABIM's questions. Dr. Salas Rushford has not proven that he copied only "principles" or common medical concepts. To the contrary, ABIM has proven that he copied "particularized facts" and "answer choices," the very categories of expression that are properly protected by copyright law.

### E.    The Copyright Act Entitles ABIM to Statutory Damages and ABIM Need Not Prove Actual Damages

Dr. Salas Rushford argues that "ABIM's lack of any damages . . . requires denying its motion for summary judgment and granting Defendant's cross-motion." Opp'n at 26. He further asserts that "no damages were ever possible to ABIM in this case"; that the timing of ABIM's copyright registrations precludes ABIM from recovering statutory damages; and that the statute of limitations bars damages arising at the time of Dr. Salas Rushford's infringement. Opp'n at 28-30. These arguments are wrong factually and as a matter of law.

As an initial matter, under the Copyright Act, a copyright owner may elect to recover statutory damages "instead of actual damages and profits" at any time before final judgment. 17 U.S.C. § 504(c)(1). "A plaintiff may elect statutory damages 'regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits.'" *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citing 5 Nimmer on Copyright § 14.04[A]), *cert. denied*, 534 U.S. 1127 (2002); *Fonovisa, Inc. v. Merino*, No. 06-3538, 2006 U.S. Dist. LEXIS 89212, at *5 (D.N.J. Nov. 27, 2006) ("Plaintiffs may elect statutory damages regardless of the adequacy of the evidence regarding actual

damages and defendant's profits") (citing *Columbia Pictures*, 259 F.3d at 1194). All that ABIM needs to do is "to inform the court—either orally or in writing—of [its] intent to seek [statutory damages] at any point before final judgment." *Smith v. Thomas*, 911 F.3d 378, 382 (6th Cir. 2018) (rejecting argument that formal election procedures must be followed for a plaintiff to be awarded statutory damages).

The availability of statutory damages disposes of Dr. Salas Rushford's argument, and renders wholly inapposite the host of non-copyright cases he cites in support of that argument, Opp'n at 26-27. The two copyright cases he cites are likewise inapposite because the plaintiffs in those cases, unlike ABIM here, did not or could not seek statutory damages. *See Bell v. Taylor*, 827 F.3d 699, 709 (7th Cir. 2016) (affirming summary judgment for defendant on the basis that plaintiff did not meet his burden to prove the fair market value of an infringed photograph as needed to support his actual damages claim); *Poppington LLC v. Brooks*, No. 20-cv-8616, 2022 U.S. Dist. LEXIS 105311, at *14-16 (S.D.N.Y. June 13, 2022) (holding that statutory damages were not available because the infringement predated the copyright registration, and plaintiff did not adduce sufficient evidence to establish actual damages).

ABIM is entitled to statutory damages under Section 504(c) of the Copyright Act, 17 U.S.C. § 504(c). Dr. Salas Rushford correctly points out that statutory damages are available for infringements that occur after the date of registration, and he acknowledges that ABIM has proffered evidence of 2007 and 2008 copyright registrations that pre-date his August 2009 conduct and that cover exam questions at issue. Opp'n at 29; ABIM Exs. 1, 14. That is dispositive of ABIM's entitlement to statutory damages. Dr. Salas Rushford's fleeting remark that "[t]he alleged infringements of the 2007 and 2008 registered works are too insignificant to constitute a copyright violation of those works," is factually and legally unsupported, and cannot

raise an issue of material fact to defeat summary judgment.  Opp'n, 29.  ABIM identified ***more than fifty*** exam questions covered by the 2007 and 2008 copyright registrations that Dr. Salas Rushford infringed, none of which falls under a "trivial copying" exception to infringement, *see* Opp'n at 29.  Every one of those questions is eligible for statutory damages.[8]  (ABIM Ex. 14.)

Finally, Dr. Salas Rushford's reliance on *Sohm v. Scholastic*, 959 F.3d 39, 52 (2d Cir. 2020), for his theory that the three-year statute of limitations bars ABIM from recovering damages that arose prior to October 2011 (*i.e.*, three years before ABIM filed this action) is misplaced.  *Sohm* is not controlling here, and is an outlier among the circuit courts.  The Third Circuit has not imposed such a three-year lookback for damages, and the only district court to address *Sohm* in this Circuit rejected it.  *See Amo Dev., LLC v. Alcon Vision, LLC*, No. 20-842-CFC, 2022 U.S. Dist. LEXIS 219368, at *11 n.1 (D. Del. Dec. 6, 2022) (collecting cases showing that "the vast majority of district courts" have rejected *Sohm's* three-year lookback, and holding that there is no bar on damages separate from the statute of limitations).

ABIM is entitled to statutory damages for Dr. Salas Rushford's infringement of ABIM's copyrighted exam questions.  That is all that is needed to enter judgment in favor of ABIM on liability.  *See Perry v. Sonic Graphic Sys.*, 94 F. Supp. 2d 616, 623 (E.D. Pa. 2000) (explaining, following entry of judgment for plaintiff on copyright claim, that the amount of statutory damages cannot be determined at summary judgment ).  It will be the province of the jury to calculate statutory damages based on its assessment of factors, including whether Dr. Salas

---

[8]     Although ABIM is not pursuing actual damages, Dr. Salas Rushford's fantastical suggestion that it could not have suffered any such damages, and in fact profited from the illicit copying and publication of dozens and dozens of its valuable exam questions, Opp'n at 28, defies logic and the record.  By copying and disclosing ABIM exam questions, Dr. Salas Rushford destroyed those questions, requiring ABIM to create new exam questions and causing substantial financial harm.

Rushford willfully infringed ABIM's copyright rights. *Feltner v. Columbia Pictures Television*, 523 U.S. 340, 355 (1998) (holding that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself"); 17 U.S.C. § 504(c) (when plaintiff proves infringement was committed willfully, statutory damages may be increased up to $150,000 per work).

### F.    ABIM Diligently Investigated Dr. Salas Rushford's Identity, Which He Intentionally Concealed, and Timely Filed this Action

It is undisputed that ABIM did not discover Dr. Salas Rushford's identity until January 2012.  Nevertheless, Dr. Salas Rushford contends that the three-year statute of limitations bars ABIM's claim, which was filed within three years of the discovery, because ABIM should have determined his identity sooner.  Dr. Salas Rushford's argument directly contravenes the Third Circuit's prior ruling in this case when he raised this argument at the pleading stage.  The Third Circuit held that by virtue of the discovery rule the statute of limitations did not begin to run until January 2012, "when [ABIM] was tipped off by another test taker."  *ABIM v. Salas Rushford*, 841 Fed. Appx. 440, 443 (3d Cir. 2020).  And the Third Circuit further instructed that independent of the discovery rule, ABIM's allegations about Dr. Salas Rushford's deliberate concealment of his identity warranted application of equitable tolling.  *Id*.  Because the discovery record fully substantiates the factual allegations on which the Third Circuit based its rulings, the Third Circuit's opinion compels the conclusion that ABIM timely filed this action.

Dr. Salas Rushford does not dispute that he used the email address padrinojr@yahoo.com when he sent the emails at issue to Dr. Arora.  Nor does he dispute that ABIM took numerous steps to investigate his identity—conducting internet and public records searches, searching ABIM's internal databases and other records obtained from Dr. Arora, employing investigators, interviewing physicians, and even sending representatives to investigate in Puerto Rico.  (ABIM

SMF ¶¶ 149-150.)  He simply calls that investigation "silly" and takes umbrage with ABIM for being "culturally confined" because it did not equate Jaime Salas Rushford with the person who used the email address padrinojr@yahoo.com and signed his emails "Jimmy R."  Opp'n at 12.  Tellingly, Dr. Salas Rushford never explains his abrupt switch from using an email address that revealed his name to one that did not when he began his series of illicit emails with Dr. Arora.  (*See* Init. Mem. at 7-8; ABIM SMF ¶¶ 56-58.)  The reason is obvious.  As the Third Circuit previously concluded in this case, "using a pseudonym and an email address that conceals one's identity are surely suggestive of intent to mislead."  *Salas Rushford*, 841 Fed. Appx. at 443.  Dr. Salas Rushford has proffered no *evidence* disproving his intent to mislead.

Moreover, Dr. Salas Rushford offers no support for his contention that ABIM's investigation was not diligent.  He merely speculates that ABIM could have discovered his identity by subpoenaing Yahoo.  Opp'n at 13.  But there is no evidence in the record (and he produced none in discovery) that he registered the "padrinojr" address with Yahoo using his actual name or identifying information.  Therefore, there is no record evidence that a subpoena would have accomplished anything.  Dr. Salas Rushford's speculation about a subpoena cannot create a disputed issue of material fact.  "Reasonable due diligence does not require a plaintiff to exhaust all possible avenues of inquiry."  *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 508 (3d Cir. 2006); *see also Dartez v. Peters*, No. 15-3255, 2018 U.S. Dist. LEXIS 33992, at *20 (D. Kan. Mar. 2, 2018) (finding that despite defendants' argument that plaintiff could have issued subpoenas or issued interrogatories, plaintiff had exercised diligence by taking other investigatory steps).  Dr. Salas Rushford does not cite any authority for his argument that ABIM's conduct was not sufficiently diligent.

Dr. Salas Rushford contends—misleadingly—that Dr. Luna testified that she "disclosed"

his identity in the summer of 2011. What Dr. Luna actually testified was that she disclosed that information only to her counsel in 2011, ***not to ABIM***. (ABIM SMF Ex. 12, Luna Dep. Tr. 140:8-144:9.) In fact, the email on which Dr. Salas Rushford relies demonstrates that as of January 12, 2012, ABIM had interviewed Dr. Luna to no avail, and that it was only after that email that Dr. Luna disclosed Dr. Salas Rushford's identity to ABIM. (ABIM SMF Ex. 12.)

Because ABIM filed this action within three years of discovering Dr. Salas Rushford's identity, the action was timely under the discovery rule. As the Third Circuit explained:

> [T]he discovery rule means that the statute of limitations period begins to run as of the date of the discovery of the cause of action. Once the statute of limitations begins to run, the plaintiff has three years to bring his claim. In this case, ABIM discovered Rushford's (intentionally concealed) identity in January 2012, when it was tipped off by another test taker. The three-year statute of limitations therefore began to run as of January 2012. Thus, when ABIM brought suit against Rushford in October 2014, it was within the three-year statute of limitations period, and, hence, timely.

*Salas Rushford*, 841 Fed. Appx. at 443 (footnote omitted). Under that rule, the proper analysis asks when ABIM knew or should have known it had a claim against Dr. Salas Rushford, not—as he now suggests, Opp'n at 11-13—when it knew it had a problem with Arora's collection and use of misappropriated exam questions. *See Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (holding that under the discovery rule, the statute of limitations does not begin to run until the plaintiff knows or should have known "that the defendant was violating his rights"); *Gilmore v. Davis*, 185 F. Appx 476, 483 (6th Cir. 2006) (holding that under the discovery rule, the plaintiff must "have discovered . . . the manner and means of the breach and the identities of the defendants"); *Energy Intelligence Grp. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus., & Serv. Workers Int'l Union, AFL-CIO/CLC*, No. 11-428, 2013 U.S. Dist. LEXIS 123080, at *56-57 (W.D. Pa. Aug. 29, 2013) (rejecting the argument that because plaintiffs had initiated earlier copyright infringement actions against other customers who engaged in

substantially similar behavior to that of the defendant, plaintiffs' claim was time-barred because such storm warnings must be specific to the defendant").

Separately, Dr. Salas Rushford's intentional concealment of his identity warrants application of equitable tolling. As the Third Circuit instructed at the pleading stage, "even in the absence of the discovery rule, ABIM's allegations concerning Rushford's deliberate attempts to disguise his identity should have warranted application of equitable tolling." *Salas Rushford*, 841 Fed. Appx. at 443. Because the evidentiary record proves the allegations underlying the Third Circuit's direction, that holding controls now. *See Cetel*, 460 F.3d at 509 (stating that equitable tolling applies when defendant "actively misled the plaintiff", thus "prevent[ing] the plaintiff from recognizing the validity of her claim within the limitations period," when "the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts"); *see also, e.g.*, *Winoff Indus. v. Stone Container Corp.* (*In re Linerboard Antitrust Litig.*), 305 F.3d 145, 160 (3d Cir. 2002), *cert. denied*, 538 U.S. 977 (2003) (equitable tolling applies "when a plaintiff's cause of action has been obscured by the defendant's conduct"; *Robinson v. Morrow*, 99 P.3d 341, 346-47 (Utah Ct. App. 2004) ("[A] party who has intentionally cloaked its identity should not benefit from the concealment.").

The discovery rule and equitable tolling each independently establish that ABIM timely filed this action. Dr. Salas Rushford's arguments, which are contrary to the Third Circuit's prior ruling in this case, does not raise an issue of fact about the application of either doctrine.

## III.    CONCLUSION

There is no genuine dispute of material fact that ABIM has valid copyrights in questions from the ABIM Examinations and that Dr. Salas Rushford copied those questions. Accordingly, the Court should grant summary judgment for ABIM on its copyright claim, and grant ABIM such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:  March 22, 2024

/s/ Hara K. Jacobs
Hara K. Jacobs
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002-1163
Tel. 856.761.3400
jacobsh@ballardspahr.com

Paul Lantieri III
Catherine Seibel
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel. 215.864.8279
lantierip@ballardspahr.com
seibelc@ballardspahr.com

Attorneys for Plaintiff,
American Board of Internal Medicine

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I caused the foregoing Memorandum in Further Support of ABIM's Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment and the exhibits thereto to be filed using the CM/ECF system, and thereby served all counsel of record with copies thereof.


Dated:  March 22, 2024                                    */s/ Hara K. Jacobs*
                                                                        Hara K. Jacobs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE, | : |
| | : |
| | : Civil Action No. 14-cv-06428-KSH-CLW |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **Oral Argument Requested** |
| JAIME ANTONIO SALAS RUSHFORD, M.D., | : |
| | : |
| Defendant. | : |

**ABIM'S COUNTER-STATEMENT OF MATERIAL FACTS IN RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**Ballard Spahr LLP**
**A Pennsylvania Limited Liability Partnership**
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002-1163
Tel. 856.761.3400

Attorneys for Plaintiff,
American Board of Internal Medicine

Pursuant to L. Civ. R. 56.1, the American Board of Internal Medicine (ABIM) submits

the following counter-statement of material facts in response to Defendant's Statement of

Material Facts Not in Dispute, with citations to supporting evidence:

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| 1.      Defendant resides in San Juan, Puerto Rico, where he practices in the specialty of Internal Medicine. | Salas Rushford Decl. ¶ 1 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 2.      He is licensed in good standing there and in multiple states including New York and Florida. | Salas Rushford Decl. ¶ 2 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 3.      In December 2020, Defendant was honored by Whole Foods, the national grocer, as one of the "Person of the Year 2020: Frontline Heroes" for volunteering to treat Covid-19 at the height of the pandemic at Coney Island Brooklyn Hospital in New York City. | Salas Rushford Decl. ¶ 3 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 4.      He has also been honored by the Senate and House of Representatives of the Commonwealth of Puerto Rico, and was a first responder to the Haiti earthquake. | Salas Rushford Decl. ¶ 4 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 5.      Defendant graduated with high honors from Colegio San Ignacio de Loyola high school in San Juan in 1997, and was admitted that same year to the prestigious "Grupo de los Cien" (Group of the Hundred) of the Department of | Salas Rushford Decl. ¶ 5 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| Natural Sciences of the University of Puerto Rico ("UPR"), Rio Piedras Campus. | | |
| 6.    Defendant subsequently obtained his bachelor's degree in Natural Sciences with high honors from the UPR in December 1999. | Salas Rushford Decl. ¶ 6 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 7.    Defendant enrolled in the UPR School of Medicine and obtained his Doctorate of Medicine, with honors, in 2004. | Salas Rushford Decl. ¶ 7 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 8.    After successfully serving as a medical resident at residency programs in New York City, Defendant returned in 2008 to Puerto Rico to complete his medical residency in 2009 as a senior resident in charge of scheduling other residents. | Salas Rushford Decl. ¶ 8 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 9.    Defendant's San Juan City Hospital recommended and partly paid for Defendant to attend the ABR test prep course. | Salas Rushford Decl. ¶ 9 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 10.    Most of the medical residents who pass the American Board of Internal Medicine (ABIM) exam do so based on test prep courses that predict the exam topics and questions.  This practice for preparing for this exam, which covers all of internal medicine, is widely accepted and encouraged by medical | Salas Rushford Decl. ¶ 10 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| residency programs, and the preeminent accrediting authority. | | |
| 11.    The ABR test prep course was fully accredited by the Medical Society of The State of New York (MSSNY), a recognized accreditor of the Accreditation Council for Continuing Medical Education (ACCME) for accreditation of American Medical Association (AMA) PRA Category 1 Credits$^{TM}$ which are accepted nationwide as an educational metric for hospital privileging, state licensure and professional credentialing of physicians; and Defendant received 42 AMA PRA Category 1 Credits$^{TM}$ for attending the course. | Salas Rushford Decl. ¶ 11 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 12.    Defendant never repeated to anyone, including Dr. Arora, anything that Defendant saw on his ABIM exam, which Defendant took and passed on August 20, 2009 in Puerto Rico. | Salas Rushford Decl. ¶ 14 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 13.    As far as Defendant knows, his communications with Dr. Arora did not disclose specific and original test questions.  If there was any actual exam material it must have been already commonly known by students and test prep courses outside of ABIM either due to sources Defendant does not know or because it covers typical or classic or textbook questions | Salas Rushford Decl. ¶ 24 | Disputed. Dr. Luna's testimony and the documentary evidence establish conclusively that Dr. Salas Rushford knew his emails to Dr. Arora contained ABIM exam content.  ABIM SMF ¶¶ 64-65, 67-69, 98, 110-11, 118, 141-43.  Moreover, there is no record evidence showing that the emails merely contained "typical or classic textbook questions and the like."  To the contrary, |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| and the like. | | ABIM's expert, Dr. Ward, demonstrated that Dr. Salas Rushford's emails contained content copied from ABIM exam questions. ABIM Ex. 13 (Ward Report, ¶¶ 13-17; Appendix B). |
| 14. To the extent that Defendant's communications included answer choices to questions that might be asked, those answer choices were typically conditions or treatments that are common answer choices on medical exams or published test-prep materials. | Salas Rushford Decl. ¶ 25 | Disputed. There is no record evidence supporting this statement. To the contrary, ABIM's expert, Dr. Ward, demonstrated that Dr. Salas Rushford's emails contained content copied from ABIM exam questions and in multiple instances, included only the *wrong* answer choices. ABIM Ex. 13 (Ward Report, ¶¶ 13-17; Appendix B). |
| 15. In communications in preparation for his ABIM exam with his instructor, Defendant used his nickname "Jimmy" and his last initial, "R.," and sent his emails from his favorite personal account which he had used since high school: "padrinojr@yahoo.com", which includes the Spanish for the Catholic religious word "godfather." | Salas Rushford Decl. ¶¶ 26-27 | Not disputed as to the material fact that Dr. Salas Rushford sent emails to Dr. Arora using the address padrinojr@yahoo.com. But disputed to the extent that Dr. Salas Rushford used his real name and corresponding email address jsalasmd@yahoo.com when initially corresponding with Dr. Arora and prior to sending ABIM exam content to Dr. Arora. ABIM SMF ¶¶ 53-54, 56. |
| 16. Defendant has a brother and has never had a sister. | Salas Rushford Decl. ¶ 28 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| | | ABIM's copyright claim. |
| 17.　　Defendant declined to make payment to ABIM as required of other ABR students as a condition of their retaining their board certification. | Salas Rushford Decl. ¶ 29 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, there is no record evidence other than Dr. Salas Rushford's own unsupported statement in his declaration for this statement. |
| 18.　　ABIM filed the above-captioned lawsuit after learning that Defendant was going to legally challenge their seven-year suspension of his board certification. | Salas Rushford Decl. ¶ 30 | Disputed.  ABIM did not know Defendant's intentions, and there is no record evidence showing otherwise. |
| 19.　　ABIM has had Defendant's phone number since at least December 2008 when he applied for the examination, and nobody from ABIM never [*sic*] called him to inquire about his activities, or the source of the foregoing email address or his identity as "Jimmy R."  Defendant is aware of ABIM's assertion that its investigator traveled to Puerto Rico to seek to determine my identity, but Defendant never heard of any of his colleagues or fellow students ever being asked any such questions by an ABIM investigator. | Salas Rushford Decl. ¶ 31 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, the record evidence establishes that ABIM diligently investigated Dr. Salas Rushford's identity. ABIM SMF ¶¶ 139-56. |
| 20.　　Defendant was the only person having the nickname "Jimmy" in the 2009 ABIM candidates for certification cohort in Puerto | Salas Rushford Decl. ¶ 32 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| Rico. | | ABIM's copyright claim. Moreover, the cited paragraph of Dr. Salas Rushford's qualifies the statement as being made "to the best of [his] knowledge." In any event, there is no record evidence other than Dr. Salas Rushford's own unsupported (and qualified) statement in his declaration for this statement. |
| 21.    The founder, owner, and instructor of the Arora Board Review (ABR) test prep course, Rajender K. Arora, M.D., held three board certifications from ABIM while teaching his course. | Arora Dep. Tr. 16:2-7 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 22.    In 2010, after ABIM had seized all the course materials, enrollment roster, and course-related student communications with Dr. Arora, ABIM embarked on a program of extracting $15,000 payments and cooperation guarantees from physicians who had, unlike Defendant, spoken about their own test, under threat of revoking or not granting their board certification. | ABIM's statement posted on its own website. (https://www.abim.org/media-center/press-releases/abim-sanctions-physicians-for-ethical-violations.aspx); Def. Ex. 7-8; Fisher Report | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim.<br><br>ABIM further disputes the accuracy of the statement, which is not supported by any of defendants' citations. Moreover, ABIM's cited press release speaks for itself, and the Fisher Report (which itself makes only unsupported statements with no factual basis) is inconsistent with this statement. |
| 23.    This was lucrative for ABIM, as these payments were in addition to a payment extracted from Dr. Arora himself, about which ABIM also made a public statement disclosing it received a | https://www.abim.org/media-center/press-releases/abim-reaches-settlement-with-arora-board-review | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| payment from Arora without disclosing the details. | | ABIM further disputes the accuracy of the statement, which is not supported by the cited press release, which speaks for itself. |
| 24.    The test prep course Arora Board Review (ABR) was one of many that "teach to the test," which in this case is the ABIM exam. | Fisher Reports (Def. Exs. 3, 4) | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 25.    Test prep courses for ABIM's exam typically predict questions that will appear, advise that some answer choices are always correct or incorrect, and emphasize basic questions that likely are on any reasonable internal medicine exam. | Fisher Reports (Def. Exs. 3, 4) | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 26.    Unaffiliated with any academic program or governmental entity, Plaintiff ABIM is a testing company that sells board certifications to young physicians in medical residency programs, based on ABIM's multiple-choice exam. | Fisher Report (Ex. 3); abim.org | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, ABIM's website—cited as a source for this statement—shows that ABIM is not "is a testing company that sells board certifications to young physicians in medical residency programs, based on ABIM's multiple-choice exam"; rather, it shows that ABIM is a physician-led, non-profit, independent evaluation organization that certifies physicians who meet specified educational, training, and professionalism requirements, and pass a secure exam. |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| 27.    While ABIM publicly uses government terminology such as "sanction", "reprimand", and the "Board", ABIM lacks the official authority that those terms generally imply in the profession of medicine. | Abim.org | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, ABIM's website—cited as the sole source for this statement—does not support the statement. |
| 28.    No state licensing authority requires ABIM certification of any physician. | Fisher Report (Ex. 3) | Agreed. |
| 29.    ABIM is a revenue-maximizing private testing business, providing lavish benefits to its officers while the creators of the questions are non-employees in various subspecialties. | Fisher Report (Ex. 3); Lipner Decl. ¶ 12 (ABIM Ex. 12) | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, the cited sources do not support this statement; instead, rather, the Lipner Declaration states, among other things, that "ABIM is a physician led, not-for-profit independent evaluation organization"; that "[t]hree groups of subject matter experts are involved in developing and approving exam content:  item-writing task force members, who develop the content for ABIM exams; mentors, who advise new item writers throughout the development process; and approval committee members, who review and approve all items before they are used on an exam"; that "[a]fter a question is drafted, it is reviewed and edited by ABIM, the item-writing task force, and the Approval Committee"; |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| | | and that "[a]ll Committee members sign agreements with ABIM confirming that ABIM is the copyright owner of all works contributed to or created by the member." Lipner Decl. ¶¶ 4, 12, 17, 21. |
| 30.    ABIM is criticized within the medical profession as to the undue burdens that its multiple choice exam imposes, without evidence of benefit. | Fisher Report (Ex. 3) | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 31.    ABIM's exam is secondary in training to medical residency programs, and thus time spent by a student in studying for ABIM's exam is time taken away from the medical residency program and clinical training. | Fisher Report (Ex. 3) | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, the statement that "ABIM's exam is secondary in training to medical residency programs" is ambiguous and not discernable, and not a purported fact suitable for a statement of material facts. |
| 32.    ABIM veered outside of its lane when it reportedly "reprimanded" every single student in the ABR course, as ABIM lacks any governmental or academic authority to "reprimand" anyone. | Fisher Report (Ex. 3) | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, this statement is an opinion, not a purported fact suitable for a statement of material facts. |
| 33.    ABIM frightened young doctors, the ones it said had revealed questions on their tests to others, many already in heavy student loan debt, into paying $15,000 apiece lest | Fisher Report (Ex. 3); Def. Exs 7-8 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| ABIM revoke their board certifications. | | Moreover, none of the cited materials contains factual support for this statement, which also sets forth opinion not suited for a statement of material facts. |
| 34.    ABIM's statements to the public concealed that ABIM was itself a participant in the same test prep course, and yet allowed all this to unfold without objecting as it could have to prevent harm to the students. | www.abim.org; ABIM SMF ¶¶ 139-44 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, ABIM disputes this statement because none of the cited materials contains factual support for this statement. ABIM was not a "participant" in the Arora prep course; facts about ABIM's *investigation* of the Arora prep course are set forth at ABIM SMF ¶¶ 139-148. |
| 35.    Dr. Arora had taught his ABR course for about 15 years. | Def. Ex. 5; Arora Dep. Tr. 22:10-23:4 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. |
| 36.    Dr. Arora testified that he was always fully compliant with any requests made by ABIM concerning his test prep course, which included only one objection by ABIM in more than [a] decade. Dr. Arora immediately complied with ABIM's objection then. | Arora Dep. Tr. 79:22-80:12 | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, the transcript of Dr. Arora's deposition speaks for itself. |
| 37.    In January 2012, Dr. Geraldine Luna was threatened by ABIM with a breach of her settlement agreement, which would have | Def. Ex. 8 (ABIM03107) | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of |

| Defendant's Statement | Defendant's Citation | ABIM's Response |
|---|---|---|
| resulted in revocation of her board certification by ABIM, if she did not change her initial statements to ABIM. | | ABIM's copyright claim. Moreover, the cited document speaks for itself. |
| 38.    Dr. Luna was required by ABIM to both make a special payment to it of $15,000 and agree to provide testimony for it, in order for her to obtain and retain her board certification, which was evidently a substantial burden as it was arranged to be paid in multiple installments. | Def. Ex. 7 (Luna Agreement (ABIM003564-3585)) | Regardless of the factual accuracy of this statement, ABIM denies that it is material to its motion because it has no bearing on the elements of ABIM's copyright claim. Moreover, the cited document speaks for itself. |
| 39.    Dr. Luna testified that she disclosed the identity of Defendant on June 12 or 13, 2011, as the author of handwritten notes that ABIM seized from Dr. Arora in December 2009. | Luna Dep. Tr. 140:22-23 | Disputed.  What Dr. Luna actually testified was that she disclosed that information only to her counsel in 2011, not to ABIM.  ABIM SMF Ex. 12, Luna Dep. Tr. 140:8-144:9. The record demonstrates that as of January 12, 2012, ABIM had interviewed Dr. Luna to no avail, and that it was only after that email that Dr. Luna disclosed Dr. Salas Rushford's identity to ABIM.  ABIM SMF Ex. 12. |

Respectfully submitted,

Dated:  March 22, 2024

/s/ Hara K. Jacobs
Hara K. Jacobs
Ballard Spahr LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ  08002-1163
Tel. 856.761.3400
jacobsh@ballardspahr.com

Paul Lantieri III
Catherine Seibel
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel. 215.864.8279
lantierip@ballardspahr.com
seibelc@ballardspahr.com

Attorneys for Plaintiff,
American Board of Internal Medicine

# EXHIBIT A

IM SELECTION

## AMERICAN BOARD OF INTERNAL MEDICINE TEST COMMITTEE AGREEMENT

THIS AMERICAN BOARD OF INTERNAL MEDICINE TEST COMMITTEE AGREEMENT ("Agreement") is made and entered into as of the 27th day of July, 2011, by and between the American Board of Internal Medicine ("ABIM") and Steven Roy McGee ("Member"). ABIM and Member, intending to be legally bound, agree as follows:

1.    **Service on Test Committee.**  ABIM retains the services of Member to serve on one or more ABIM Test Committees, for which Member will be paid honoraria.  Member will perform such services in accordance with ABIM and Test Committee policies.

2.    **Confidential Information.**

(a)    Use of Confidential Information.  Member shall take all appropriate precautions to protect Confidential Information from unauthorized disclosure, including but not limited to: ensuring that Confidential Information is not accessed, duplicated or dispersed by or to any unauthorized person; identifying and securing all Confidential Information when not in use; using authorized and secure means of discussing, storing, mailing and disposing of Confidential Information; and any other precautions normally taken by Member to protect his or her own confidential or proprietary information.  In addition, Member shall comply with any and all ABIM policies and procedures relating to Confidential Information.

(b)    "Confidential Information" means information or knowledge in any form that is (i) required by law or by agreement to be kept confidential; or (ii) not generally available to the public and that may be of competitive or economic value to ABIM.  Confidential Information includes, but is not limited to all examination-related materials, information, research, data, analysis, drafts, questions and answers, and administrative processes for ABIM's Certification and Maintenance of Certification examinations for internal medicine and internal medicine subspecialties.

3.    **Intellectual Property.**  Member acknowledges and agrees that all works that Member prepares or prepared, in whole or part, pursuant to Member's service on the Test Committee ("Works"), have been since creation and shall be Works Made for Hire, as that term is defined by the United States Copyright Act, with all rights of ownership fully vested in ABIM from the first moment of creation of any portion of such Works.  Member further agrees that, prior to the Member's service on the Test Committee and prior to the Member's creation of any Works for ABIM, the parties agreed that all such Works would be Works Made for Hire, as that term is defined by the United States Copyright Act, with all rights of ownership fully vested in ABIM from the first moment of creation of any portion of such Works, and that the original agreement concerning Member's service on the Test Committee was intended to memorialize that the Works would be Works Made for Hire.  To the extent that any such Works are deemed not to be Works Made for Hire, Member irrevocably and without limit assigns all current and future right, title, and interest, including without limitation all copyrights, in the works to ABIM (or its designee) as set forth above, together with all renewals and extensions of such rights that may be obtained under the laws now or hereafter in force and effect in the United States of America and any other country or countries.  Member expressly waives any ownership claim, now or in the future, in the Works; any right or claim of any right to create new derivative works or adaptations based on the Works in the future; and the right to apply for or file any copyright registrations for the works or any

DMEAST #12035097 v2

ABIM00002

part of them.  Member acknowledges that ABIM has the sole right to apply for, obtain, and own copyright registrations and use the copyright notices to the Works.  Member agrees to cooperate with ABIM to protect ABIM's intellectual property rights, including signing all papers that ABIM requests (at ABIM's expense) to assign, apply for and enforce those rights.

   4.   **Return of ABIM Property.**  Upon the conclusion of Member's service on the Test Committee, Member acknowledges that all records, memoranda, notes, compositions, writings, diaries, drawings, devices, data and any other items that disclose, embody or contain Confidential Information in Member's possession shall be returned immediately to ABIM and, to the extent such Confidential Information is contained in electronic files located on any equipment to which Employee will continue to have access (for example, a home computer), Member agrees to destroy such Confidential Information.

American Board of Internal Medicine

_Steve McGee_
Test Committee Member Signature

_Steven R McGee_
Member Name Printed

By: _Lynn O. Langdon_

Dated: _8-2-2011_

Title: **Senior Vice President**
      **Chief Operating Officer**

Dated: **July 27, 2011**

DMEAST #12035097 v2

ABIM00003

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE, | : |
| | : |
| | : Civil Action No. 14-cv-06428-KSH-CLW |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **Oral Argument Requested** |
| JAIME ANTONIO SALAS RUSHFORD, M.D., | : |
| | : |
| Defendant. | : |

**DECLARATION OF LAWRENCE D. WARD, M.D.**

I, Lawrence D. Ward, M.D., hereby declare as follows:

1.      I am a licensed practicing internal medicine physician and vice president of Physician Services and Clinical Integration at Bayhealth.  I am fully competent to provide testimony, and will be available to testify at trial as may be desired.  I have personal knowledge of the facts set forth herein.

2.      I submitted an expert report in this matter, which I signed, dated October 17, 2016.  I understand that my expert report, with its two appendices (Appendix A and Appendix B), were docketed in this case as part of a filing at D.E. 135-2, 3, and 4.

3.      To the best of my knowledge, my statements in my expert report are correct as to the facts and as to my opinions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March _6_, 2024

_____
Lawrence D. Ward, M.D.

Andrew L. Schlafly (AS4533)
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
(908) 719-8608
(908) 934-9207 (fax)
*Attorney for Defendant Jaime A. "Jimmy" Salas Rushford, M.D.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AMERICAN BOARD OF INTERNAL MEDICINE,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action** |
| **vs.** | ) |
| | ) **14-cv-06428-KSH-CLW** |
| **JAIME A. "JIMMY" SALAS RUSHFORD, M.D.,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) **Oral argument requested** |
| | ) |

## REPLY MEMORANDUM BY DEFENDANT JAIME A. "JIMMY" SALAS RUSHFORD, M.D., IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT

## Table of Contents

Table of Contents.............................................................................................. ii

Table of Authorities ......................................................................................... iii

Reply Argument .................................................................................................1

   I.   ABIM Lacks Timely, Valid Copyright Registrations Required for Statutory Damages, and Lacks Admissible Evidence to Support Infringement on 2007 and 2008 Registered Works ...................................................................3

      A.  ABIM's 2009 Registrations Were Too Late for Statutory Damages.................4
      B.  There Is No Admissible Evidence as to Any Infringement on ABIM's 2007 and 2008 Registrations...........................................................................5
      C.  ABIM's Argument of Relating Back on Work-for-Hire Does Not Salvage Its Claim for Statutory Damages.........................................................6

   II.  ABIM Bears the Burden of Proof of Ownership, which It Has Failed to and Cannot Satisfy...............................................................................8

   III. ABIM Fails to Provide the Side-by-Side Comparison Required for a Finder of Fact to Determine If Copyright Infringement Has Occurred. ..................................9

   IV. The Factual Record Requires Dismissing ABIM's Claim Based on the Three-Year Statute of Limitations, and the Second Circuit Precedent Precludes Clawing Back More than Three Years for Damages .............................................10

      A.  The Factual Record Demonstrates that ABIM Filed After the Three-Year Statute of Limitations Expired. .......................................................10
      B.  The Second Circuit Precedent Precludes Clawing Back More Than Three Years for Damages........................................................................11

Conclusion .......................................................................................................12

Certificate of Service .......................................................................................12

**Table of Authorities**

**Cases**                                                                    **Page(s)**

*16 Casa Duse, LLC v. Merkin*, 2013 U.S. Dist. LEXIS 143958, 2013 WL 5510770
    (S.D.N.Y. 2013), *rev'd and remanded on other grounds*,
    791 F.3d 247 (2d Cir. 2015)....................................................................... 8-9

*Adriana's Ins. Servs. Inc. v. Auto Int'l Ins. Agency, Inc.*,
    No. 8:22-cv-00174-JLS-ADS, 2023 U.S. Dist. LEXIS 208056
    (C.D. Cal. Aug. 18, 2023)............................................................................7

*Amo Dev., LLC v. Alcon Vision, LLC*, Civil Action No. 20-842-CFC,
    2022 U.S. Dist. LEXIS 219368 (D. Del. Dec. 6, 2022)........................................11

*Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006) ...................................11

*Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 U.S. Dist. LEXIS 155438,
    2014 WL 5597274 (N.D. Cal. 2014) ........................................................8

*Hacienda Records, LP v. Ramos*, No. 2:14-19,
    2016 U.S. Dist. LEXIS 84247 (S.D. Tex. June 29, 2016)..............................9

*Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998) ....................................................3

*Kunkel v Jasin*, 420 Fed. App'x 198 (3d Cir. 2011) ...........................................8

*Sohm v. Scholastic, Inc.*, 959 F.3d 39 (2d Cir. 2020) .........................................11

*Tanksley v. Daniels*, 902 F.3d 165 (3d Cir. 2018) ...............................................9


**Federal Statutes and Rules**

17 U.S.C. § 101 ............................................................................................8

17 U.S.C. § 408(a) .......................................................................................8

17 U.S.C. § 411(b)(2) ..................................................................................8

17 U.S.C. § 412(1) .......................................................................................3

Local Civ. R. 7.1 .........................................................................................1

**Treatise**

1 Nimmer § 5.01[A] .....................................................................................8

Defendant v. Jaime A. "Jimmy" Salas Rushford ("Dr. Salas-Rushford" or simply "Defendant"), through his counsel, submits his reply memorandum in support of his cross-motion for summary judgment against Plaintiff American Board of Internal Medicine ("ABIM") [replying to DE 214 & 215].

## REPLY ARGUMENT

In its response, ABIM belatedly concedes that it is not asserting any claim for actual damages, and tacitly admits that it has no valid claim for statutory damages on its untimely 2009 copyright registrations, because those registrations were subsequent to the alleged infringement. Yet ABIM's 2009 untimely registrations comprise the basis for nearly all of its allegations in this case. ABIM has not presented any admissible evidence about any infringement on the works it registered in 2007 and 2008.[1]

ABIM improperly relies entirely on its expert's report for the analysis of the alleged infringement, when this is an issue of fact for a side-by-side comparison by the Court. Moreover, ABIM's expert compared the wrong materials for its claim for statutory damages. Evidence for statutory damages requires comparing the allegedly infringing work to the registered work. Instead, ABIM's expert apparently compared the allegedly infringing work to 2009 ABIM exam questions and answers. ABIM's expert never compared the allegedly infringing work to the 2007 and 2008 registered works, and thus ABIM has no evidence to support its only remaining claim, for statutory damages. Summary judgment for Defendant should be granted.

---

[1] ABIM failed to submit a proposed order as required by Local Civ. R. 7.1. Contrary to due process, ABIM has been unclear what it demands, vaguely seeking summary judgment as to "violation" of copyright laws (ABIM Init. Mem. 1, 2). ABIM improperly seeks bifurcation of liability from damages issues, but without moving for partial summary judgment or ever obtaining leave to do so.

1

ABIM has wasted the resources of this Court and Defendant for a decade by pressing claims that ABIM has long known were invalid. The following tacit admissions in ABIM's response reinforce why summary judgment should be granted to Defendant:

- ABIM's evidence in this case relies almost entirely on testimony by its witness Dr. Luna in 2016 about what she might have seen on an ABIM exam that she took more than seven (7) years earlier, in 2009.

- 15-20% of ABIM's exam was an exact copy of what was taught in the Arora Board Review (ABR) course, which was a fully accredited test prep course established for 15 years, and Defendant's participation was paid for in part by the San Juan City hospital where he was doing his residency.

- Defendant never disclosed, to anyone, anything that he saw on his exam.

- ABIM employees did not write any of the questions and answers at issue in this case, ABIM did not have work-for-hire agreements with those who did write the questions and answers, and ABIM misrepresented to the Copyright Office that these were developed under "Work made for hire" agreements (which have to be in writing).

- Although ABIM has the burden of proof of copyright ownership, ABIM has never provided to this court or to Defendant any agreement by those who wrote the questions or answers at issue, and thus own the copyright in them.

- ABIM has always had available multiple ways better than suing students of an accredited test prep course, such as ABR, in order to terminate or force changes in the course.

- There is no legal precedent for ABIM's copyright claim against a student based on the alleged use of questions in his preparation for an exam.

- ABIM forced students, including its solitary witness in this case, of ABR to pay ABIM $15,000 apiece, under threat of revoking their board certification.

- ABIM never sought from Yahoo.com the identity of the person using the padrinojr@yahoo.com account, an account Defendant has been using since high school and of which ABIM was aware beginning in 2009, and ABIM's own witness testified she disclosed Defendant's identity in June 2011 – more than three years prior to ABIM's untimely filing of this lawsuit.[2]

---

[2] Dr. Luna disclosed Defendant's identity to her attorney in June 2011, which ABIM admits but says it was not to ABIM (ABIM Opp'n 29). In fact, her testimony was that all of her

- ABIM's counsel Roberto Rivera-Soto was flagrantly abusive of Defendant during his deposition in this case, far beyond the outer limits of even highly contentious litigation.

In sum, ABIM has not proven – and cannot prove – that it has any entitlement to statutory damages here, while ABIM's response has waived any claim for actual damages (of which it has none anyway after extracting $15,000-per-student ransoms). Statutory damages require proper registration prior to the alleged infringement, which ABIM did not attain for any relevant works. Summary judgment should be granted to Defendant.

I.    **ABIM Lacks Timely, Valid Copyright Registrations Required for Statutory Damages, and Lacks Admissible Evidence to Support Infringement on 2007 and 2008 Registered Works.**

Statutory damages under copyright are available only based on timely, valid copyright registrations filed prior to the alleged infringement, as ABIM concedes. (ABIM Opp'n at 25 – "Dr. Salas Rushford correctly points out that statutory damages are available for infringements that occur after the date of registration," which precludes statutory damages from applying to ABIM's subsequent 2009 registration). *See also Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998) ("Section 412(1) … leaves **no room for discretion** ….") (emphasis added). No statutory damages can be awarded for nearly all of ABIM's claim, which is based primarily on its September 17, 2009 registrations.

ABIM failed to submit any admissible evidence of infringement on its 2007 and 2008 registered works, and thus summary judgment must be granted to Defendant as to these works also. ABIM relies entirely on its expert's report, but he compared allegedly infringing work to ABIM exam questions and answers after the administration of the

---

communications with ABIM were through her attorney and there is no indication that she withheld this from ABIM. ABIM's own conduct in July 2011 is suggestive of knowledge.

3

August 2009 exam, which was based primarily on ABIM's untimely 2009 registration. ABIM's expert did not directly compare allegedly infringing material to the 2007 and 2008 registered works. Instead, ABIM relies on an unsworn tabulation drafted by an unknown person – whom Defendant has never had an opportunity to cross-examine – that asserts a small percentage of the questions were based on only 2007 and/or 2008 registered works. (ABIM Exh. 14) This unsworn exhibit is inadmissible evidence.

ABIM failed to provide a side-by-side comparison of the allegedly infringing material to the 2007 and 2008 registered works themselves for this Court to evaluate potential infringement, as required in copyright cases. ABIM also did not validly register its 2007 and 2008 works prior to the alleged infringement, and did not file any correction.

ABIM now incorrectly states, pointing to ABIM SMF and Def. CSMF ¶ 21, that Defendant conceded there is no evidence that ABIM knew the exams were not works for hire. (ABIM Opp'n 4). But paragraph 21 does not support that. It merely states that subject matter experts draft the test blueprint and questions. It does not address the dispositive nature of the legal relationship between ABIM and each of those drafters at material times. Conversely, ABIM submits here a work-for-hire agreements signed in July 2011, showing it had subjective awareness that its exams were not works for hire.

### A.    ABIM's 2009 Registrations Were Too Late for Statutory Damages.

ABIM's registration of its May 1, 2009 work (TX 7-116-588) was not until September 17, 2009, which was after the alleged infringement in August 2009 and also more than three months after its date of first publication, and thus no statutory damages can be awarded on that. ABIM's registration of its August 1, 2008 work (TX 7-116-625) was likewise not until September 17, 2009, which was after the alleged infringement in

August 2009 and also more than three months after its date of first publication, and

likewise no statutory damages can be awarded based on that. ABIM has no valid claim

for statutory damages based on any work registered in 2009 – *i.e.*, nearly all of its case.

**B.    There Is No Admissible Evidence as to Any Infringement on ABIM's 2007 and 2008 Registrations.**

ABIM has not submitted any admissible evidence as to any infringement on its

2007 and 2008 registrations, on which ABIM belatedly relies entirely for its statutory

damages claim. ABIM's expert, Lawrence D. Ward, M.D., makes no reference in his

report to any questions or answers in the 2007 and 2008 registrations. (ABIM Exh. 13)

The Appendix B to his report does not identify which, if any, of the allegedly infringed

test material was from ABIM's 2007 or 2008 registrations.

ABIM itself admits that "Dr. Ward compared Exhibits B, C, D, and F to the

Complaint [allegedly infringing work] against questions that appeared on the ABIM

Certifying Examination in Internal Medicine, produced by ABIM in this action." (ABIM

SMF ¶ 125) But that is not the relevant comparison required to assert a claim for

statutory damages. Instead, Dr. Ward (and the Court) would need to compare the

allegedly infringing material to the 2007 and 2008 registered works themselves.

There is no admissible evidence before the Court for it to compare the allegedly

infringing material against the 2007 and 2008 registered works. And ABIM untimely

registered in 2009 the work that contained all or nearly all of the 2009 exam questions.

ABIM relies heavily on its Exhibit 14 (ABIM Opp'n 3, 26), but that table is

unsworn and inadmissible hearsay. Moreover, the vast majority of its entries relate to

ABIM's untimely 2009 registration. Defendant has not had any opportunity to cross-

examine whoever prepared this table – whose identity ABIM has not even disclosed –

and this table was not part of Dr. Ward's expert report. Exhibit 14 is not proper evidence

on a motion for summary judgment, and without it ABIM has no relevant evidence.

ABIM's own 2009 registration represents that it contains modified questions from

prior registrations (ABIM Exh. 1), and yet ABIM has not submitted any evidence as to

whether alleged infringement was a copy of later revisions rather than the original. Dr.

Ward's expert report does not provide any information about this, and he compared the

allegedly infringing work only to 2009-revised questions, not to the original registrations.

Improperly relying on its Exhibit 14, ABIM asserts that there were more than 50

(out of 240 per exam) "questions covered by the 2007 and 2008 copyright registrations,"

and that "[e]very one of those questions is eligible for statutory damages." (ABIM Opp'n

26) There is no admissible evidence in support of that assertion, as Dr. Ward's report

compared the allegedly infringing questions to 2009 exam questions, not 2007 and 2008

registrations. Moreover, ABIM's witness Dr. Luna testified that 15-20% of the 2009

ABIM exam contained "exactly the same questions" as what ABR taught in its course,

and ABIM has not disputed that estimate. (Def. Mem. 9)  50 questions out of 240 total

questions is roughly 20%, which means none of the alleged infringement necessarily

came from the exam rather than from the ABR course.

### C.      ABIM's Argument of Relating Back on Work-for-Hire Does Not Salvage Its Claim for Statutory Damages.

ABIM's belated attempt to shift from its 2009 registrations – which cannot

support statutory damages – to its 2007 and 2008 registrations fails for additional reasons.

ABIM tacitly concedes that it lacked "work-for-hire" agreements, which must be

in writing, at the time of its 2007 and 2008 registrations. But now ABIM untimely

provides merely one agreement executed in 2011, by someone having no known direct

role in any of the questions and answers at issue here. (ABIM Ex. A) ABIM then argues that this agreement should relate back to 2007 and 2008.

For starters, there is no evidence that the person who signed this or any similar agreement actually drafted any of the questions and answers at issue here. It is the drafter who holds the copyright, not ABIM unless there was an actual written agreement establishing this as a "work-for-hire". There was no such agreement, and thus ABIM's claim for statutory damages fails entirely.

Second, ABIM has never filed a correction to its wrongful 2007 and 2008 registrations, so there is no subsequent registration to relate back. ABIM lacked the necessary written work-for-hire agreements at the time of its copyright registrations, and continues to lack them today as to the specific questions and answers at issue here. ABIM registered works with the Copyright Office that ABIM did not own at the time or now. ABIM's invalid registrations cannot possibly sustain a claim for statutory damages now.

ABIM relies on a federal district court decision from California in which statutory damages were not an issue, and the original author had transferred ownership by assignment to the plaintiffs there. See *Adriana's Ins. Servs. Inc. v. Auto Int'l Ins. Agency, Inc.*, No. 8:22-cv-00174-JLS-ADS, 2023 U.S. Dist. LEXIS 208056 (C.D. Cal. Aug. 18, 2023) (cited by ABIM Opp'n 6, 21). "Further, assuming this photo was not made for hire, Guerra had original ownership of the image's copyright as the creator," but such original ownership has not been, and cannot be, established by ABIM here.

Moreover, federal law requires making an inquiry of the Copyright Office before any revision is allowed to relate back:

In any case in which inaccurate information described under paragraph (1) [inaccurate information on a copyright registration] is alleged, the court shall

7

request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(2). ABIM knew it was not the author of the questions and answers that it purportedly registered, and ABIM knew then that it did not have any written work-for-hire agreements with those who drafted this work. This is not in inadvertent mistake. This is sufficient to deny ABIM statutory damages based on invalid registrations.

## II.    ABIM Bears the Burden of Proof of Ownership, which It Has Failed to and Cannot Satisfy.

Only the author or an assignee of an author may assert a valid copyright claim. *See* 1 Nimmer § 5.01[A] ("[T]he person claiming copyright must either himself be the author, or he must have succeeded to the rights of the author."). ABIM is neither here.

The authors of the questions and answers at issue in this case own the copyright in them, and no ABIM employee authored any of the material at issue here. An oral agreement is insufficient. *See* 17 U.S.C. § 101 (A work is "made for hire" by a non-employee, as here, "if the parties expressly agree in ***a written instrument*** signed by them that the work shall be considered a work made for hire.") (emphasis added).

As explained in detail by a federal court:

Only "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim ...." *See* 17 U.S.C. § 408(a). As such, ***false statements of ownership or authorship in a work render a copyright registration invalid as a matter of law. See, e.g., Kunkel v Jasin***, 420 Fed. App'x 198, 199-200 (3d Cir. 2011) ("Because the bankruptcy estate, not [Claimant], owned the designs at the time that [Claimant] registered them with the Copyright Office, those registrations are invalid."); *Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 U.S. Dist. LEXIS 155438, 2014 WL 5597274, at *5 (N.D. Cal. 2014) ("[Claimant] filed a registration application which identified himself as the 'author' of the image, which he knew he was not. And then, when faced with the argument that he still had no valid ownership interest in any copyright, he resorted to additional meritless arguments: That his registration was prima facie valid (which it was not) ...."); *16 Casa Duse, LLC v. Merkin*, 2013 U.S. Dist. LEXIS 143958, 2013 WL 5510770, at

8

*11, 12 (S.D.N.Y. 2013), *rev'd and remanded on other grounds*, 791 F.3d 247 (2d Cir. 2015) (court had "no difficulty finding that Plaintiff is entitled to summary judgment invalidating [defendant's] copyright registration" where defendant was not the author of the work).

*Hacienda Records, LP v. Ramos*, No. 2:14-19, 2016 U.S. Dist. LEXIS 84247, at *24-26 (S.D. Tex. June 29, 2016) (emphasis added).

ABIM tacitly admits that none of its employees created the relevant questions and answers. (ABIM CSMF ¶ 29) ABIM does not provide evidence of any agreement with the authors of the allegedly infringed work, and thus fails to prove ownership.

### III.    ABIM Fails to Provide the Side-by-Side Comparison Required for a Finder of Fact to Determine If Copyright Infringement Has Occurred.

It is fundamental that a side-by-side comparison of the allegedly infringing material and the registered work must be provided by a plaintiff to the finder of fact in order to prove copyright infringement. *Tanksley v. Daniels*, 902 F.3d 165, 174 (3d Cir. 2018) ("[T]he **trier of fact performs a side-by-side comparison** of the works and, excluding any unprotectable elements, assesses whether the two works are substantially similar.") (emphasis added). An expert report might assist when there is highly technical copying, such as computer programs, but is no substitute on allegations of copying of expressions, as here. "The District Court properly concluded that no additional evidence or expert analysis would be relevant to the question of substantial similarity." *Id.* at 172.

Defendant repeatedly objected to how ABIM fails to provide the side-by-side comparison. (Def. Mem. 16, 19, 20, 21, 22) In response, ABIM falsely insists that it and its expert, Dr. Ward, "have done exactly that." (ABIM Opp'n 12, citing its Init. Mem. 22-26; ABIM SMF ¶¶ 125-135; ABIM asserts its "describing that comparison in great detail across more than four pages of ABIM's Initial Memorandum")

But merely "describing" a comparison is not providing the comparison itself for the finder of fact – this court – to make its own determination. ABIM relies entirely on its expert report, but that is insufficient to establish copyright infringement here.

### IV.   The Factual Record Requires Dismissing ABIM's Claim Based on the Three-Year Statute of Limitations, and the Second Circuit Precedent Precludes Clawing Back More than Three Years for Damages.

#### A. The Factual Record Demonstrates that ABIM Filed After the Three-Year Statute of Limitations Expired.

ABIM acquired in December 2009 everything it needed for its claim, when it seized all the ABR course-related materials of the instructor Dr. Arora. Yet ABIM did not file this action until October 2014 – more than five years later. The record shows that:

* ABIM made no inquiry of Yahoo.com as to the identity of the owner of the padrinojr@yahoo.com account, about which ABIM had full knowledge of its alleged copying as of December 2009. (ABIM Opp'n 28)[3]

* "Jimmy" is a common nickname for "Jaime".

* In the course registration email on which ABIM relies (ABIM Exh. 10), Defendant expressly refers to himself as "Jimmy" in the "From" line with his full identification (ABIM Exh. 10; Def. CSMF ¶ 58).

* Defendant was the only person with the name or nickname Jimmy in the 2009 ABIM candidate for certification cohort in Puerto Rico. (Def. Exh. 1, Dr. Salas Rushford Decl. ¶ 32).

* ABIM's own witness, who agreed to cooperate fully with ABIM, testified that she disclosed the identity of Defendant on June 12 or 13, 2011, as the author of handwritten notes that ABIM seized from Dr. Arora in December 2009. ABIM asserts that this disclosure was only to Dr. Luna's attorney, but Dr. Luna testified that she communicated with ABIM that way, as is customary whenever someone has counsel. (*See* ABIM Ex. 12, Luna Dep. Tr. 144:8 – "Everything was through my attorney.")

---

[3] In its response, ABIM falsely and without evidence suggests that Defendant may have concealed his identity from Yahoo. (ABIM Opp'n 28). Yahoo would necessarily have Defendant's IP address from his use of this account for many years, which would disclose his location and identity, which ABIM could have easily obtained from Yahoo.

\*Tellingly, all the belated work-for-hire agreements ABIM seeks to introduce to support its claims to copyright ownership and statutory damages were signed in July 2011, just a month after Dr. Luna identified Defendant. Now, ABIM presumably expects the Court to believe that timing was a mere coincidence.

\* ABIM's timing of its filing of its lawsuit was not contemporaneous with its alleged belated discovery of the identity of Defendant, but rather was contemporaneous with ABIM learning that he would be suing ABIM for suspending him.

The Third Circuit did not make any factual findings on this issue of the statute of limitations, and merely accepted as true what ABIM alleged in its pleading. ABIM's argument is incorrect that Defendant's position is "contrary to the Third Circuit's prior ruling in this case." (ABIM Opp'n 30) No fact-finding was done by the Third Circuit.

As to equitable tolling, ABIM's own quoted authority states that it applies only when "ignorance is **not** attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." (ABIM Opp'n 30, quoting *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006), emphasis added). The facts show a "lack of reasonable due diligence [by ABIM] in attempting to uncover the relevant facts."

### B.   The Second Circuit Precedent Precludes Clawing Back More Than Three Years for Damages.

Preeminent in copyright law, the Second Circuit's unanimous precedential ruling that copyright damages cannot be recovered more than three years prior to the lawsuit is increasingly the standard. (Def. Mem. 30, quoting *Sohm v. Scholastic, Inc.*, 959 F.3d 39 (2d Cir. 2020)). ABIM relies instead on an unpublished decision by the district court in Delaware, but its survey of cases failed to recognize that most of the post-*Sohm* have followed it, while merely a majority of pre-*Sohm* decisions went the other way. *Amo Dev., LLC v. Alcon Vision, LLC*, Civil Action No. 20-842-CFC, 2022 U.S. Dist. LEXIS 219368, at \*11 n.1 (D. Del. Dec. 6, 2022). ABIM cannot distinguish *Sohm*'s holding.

**CONCLUSION**

For the foregoing reasons and those in his initial memorandum, Defendant Dr. Salas Rushford requests that his cross-motion for summary judgment be granted, ABIM's motion be denied, attorneys' fees be granted to Defendant, and this case be dismissed.

Dated: April 5, 2024                                    Respectfully submitted,

/s/ Guillermo L. Mena-Irizarry                    /s/ Andrew L. Schlafly

Guillermo L. Mena-Irizarry                       Andrew L. Schlafly
Pro Hac Vice Counsel for Dr. Salas               Attorney at Law (AS4533)
Rushford                                         Local Counsel for Dr. Salas Rushford
Ext. Roosevelt                                   939 Old Chester Road
559 Calle Cabo Alverio                           Far Hills, New Jersey 07931
San Juan, PR 00918                               Tel: (908) 719-8608
Tel: (787) 347-9793                              E-mail: aschlafly@aol.com
E-mail: guillermo.mena@me.com

Attorneys for Defendant Jaime A. "Jimmy" Salas Rushford, M.D.


**CERTIFICATE OF SERVICE**

I, Andrew L. Schlafly, counsel for Defendant Jaime Salas-Rushford, do certify that on April 5, 2024, I electronically filed the foregoing Reply Memorandum with the Clerk of the Court using the Electronic Case Filing system, which I understand to have caused service of counsel on behalf of the Plaintiff.

s/ Andrew L. Schlafly
Andrew L. Schlafly (AS4533)
*Attorney for Defendant Jaime A. "Jimmy"*
*Salas-Rushford, M.D.*

12